Banco Comercial de Mayagüez, recurrente, *v.* El Registrador de la Propiedad de Caguas, Sección Primera, recurrido.

*Número:* CE-86-434          *Resuelto:* 30 de abril de 1987

774

*Ángel L. Alicea Parés,* de *Montañez & Alicea,* abogado del recurrente; el Registrador recurrido compareció por escrito.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

Acude ante nos el Banco Comercial de Mayagüez (en adelante Banco Comercial) para que revisemos la actuación del honorable Registrador de la Propiedad, Luis Mojica Sandoz, recurrido, que denegó la inscripción del contrato de arrendamiento presentado por el recurrente. Los hechos que sirven como fundamento a este recurso gubernativo se describen a continuación.

En enero de 1986 el Banco Comercial alquiló un espacio de terreno localizado en el Centro Comercial Cagüitas Mall en Caguas. La parcela donde se encuentra ubicado el centro comercial consta inscrita en el Registro de la Propiedad. El contrato de arrendamiento antes mencionado, se llevó a cabo mediante escritura pública, la cual fue presentada para su inscripción el 11 de febrero de 1986. Con fecha de 25 de marzo

de 1986, el Honorable Registrador de la Propiedad, Luis Mojica Sandoz, notificó al notario que el documento presentado no podía inscribirse sin que se presentara la autorización de la Administración de Reglamentos y Permisos (en adelante A.R.P.E.). El 2 de abril de 1986, el Honorable Registrador de la Propiedad envió otra notificación al abogado sobre el mismo defecto. Añadió que se había presentado una escritura de hipoteca por lo que de no corregirse el defecto señalado, la hipoteca se inscribiría dentro del término que rija la Ley Hipotecaria de 1979, Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. sec. 2001 *et seq.*) y le apercibió nuevamente que de no estar conforme con la calificación del Registrador podía, dentro del término improrrogable de veinte (20) días siguientes a la notificación, radicar escrito de recalificación. [1] Con fecha de 1ro de mayo de 1986, el Banco Comercial recurrente

---

[1] El escrito de calificación expone lo siguiente:

"En *cumplimiento del Artículo 69* de la Ley Hipotecaria Núm. 198 del 8 de agosto de 1979, enmendada, comunico a usted que el documento a que alude el epígrafe y que fuera presentado el 11 de febrero de 1986 adolece de las siguientes faltas que se detallan a continuación, que impiden la registración del mismo:

"No puede arrendarse la parcela de terreno descrito sin autorización de ARPE.

"Si la edificación está en proyecto quizás se podría inscribir el derecho a construir, es decir, el derecho de superficie, pero tal como está expresado el propósito, no tiene entrada al Registro.

"Se ha presentado una hipoteca constitu[i]da por la escritura número 15 otorgada el 10 de marzo de 1986 ante el Lic. Manuel Correa Calzada, Asiento 554 del Diario 577, y de no corregir los defectos apuntados la hipoteca será inscrita dentro de los términos que da la Ley Hipotecaria vigente.

*"El presentante o interesado que no esté conforme con la calificación del Registrador podrá, dentro del término improrrogable de 20 días siguientes a la notificación, radicar un escrito de recalificación exponiendo sus objeciones a la calificación, los fundamentos en que apoya su recurso y una súplica específica de lo que interesa.*

"Transcurridos los 20 días se entenderán consentidas las faltas señaladas. De no ser subsanadas las faltas, y expirado el plazo de 60 días desde la fecha de esta notificación sin haberse interrumpido dicho término[,] caducará el Asiento de Presentación y se cancelarán todos los derechos consignados." (Énfasis suplido.) Escritura 17 otorgada el 30 de enero de 1986.

envió al Honorable Registrador de la Propiedad copia de la solicitud del permiso de urbanización y la solicitud, aprobada por A.R.P.E., del permiso de construcción del edificio. El 9 de mayo de 1986 el Registrador de la Propiedad notificó al Banco recurrente que los defectos notificados no fueron corregidos por los documentos enviados. Además añadió, por primera vez, que se trataba de una segregación y que, por lo tanto, se necesitaba permiso de A.R.P.E. para inscribir cualquier derecho sobre la parcela de terreno que resultara de la segregación. Esto constituyó el señalamiento de un nuevo defecto. El 29 de mayo de 1986 el Banco Comercial solicitó recalificación y el 10 de junio de 1986 el Registrador de la Propiedad envió una notificación que señalaba que por haberse recibido la solicitud de recalificación pasado el término de 20 días que dispone la ley, Art. 70 de la Ley Hipotecaria de 1979, *supra*, 30 L.P.R.A. sec. 2273, los mencionados defectos fueron consentidos. Además, por haber transcurrido más de 60 días desde la notificación del defecto sin que se corrigiera el mismo, había caducado el asiento de presentación. Ley Hipotecaria de 1979, *supra*, Art. 69 (30 L.P.R.A. sec. 2272).

El presente recurso gubernativo nos plantea dos interrogantes. La primera es si transcurrieron veintiún (21) días desde la fecha de la notificación de que los defectos mencionados no fueron corregidos con los documentos presentados hasta la fecha en que se presenta el escrito de recalificación. (²) La segunda interrogante es si estamos ante la segregación de una parcela de terreno, para lo cual es necesario el permiso de A.R.P.E. según lo exige la ley. Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 71 *et seq.*).

---

(²) Por la conclusión a que llegamos no es necesario pasar juicio sobre el planteamiento del Registrador de la Propiedad de que podía "a[u]n recibiendo fuera de término el escrito de recalificación, conocer de él y proceder bien a reconsiderar su calificación y denegar la inscripción".

# I

■ El Art. 69 de la Ley Hipotecaria de 1979, *supra*, 30 L.P.R.A. sec. 2272, (³) dispone que cuando el Registrador de la Propiedad hace más de una notificación sobre su calificación de un documento presentado al registro, el término de sesenta (60) días para corregir el defecto comenzará a contar a partir de la última notificación del Registrador, siempre y cuando la segunda notificación se haga "dentro del término de sesenta (60) días a partir de la primera notificación, antes de que haya caducado el asiento de presentación". Art. 81.10 del Reglamento para la ejecución de la Ley Hipotecaria de 1979.

■ De otra parte el Art. 70 de la Ley Hipotecaria de 1979, *supra*, 30 L.P.R.A. sec. 2273, dispone que el presentante de un documento que no esté conforme con la calificación del Registrador, tendrá un plazo improrrogable de veinte (20) días siguientes a la notificación hecha por el Registrador de la Propiedad, para presentar su escrito que solicite la recalificación. Si transcurren los veinte (20) días sin objetar la calificación del Registrador de la Propiedad se entenderán consentidos los defectos mencionados. Es a partir de la notificación

---

(³) Art. 69 de la Ley Hipotecaria de 1979, *supra*, 30 L.P.R.A. sec. 2272: *"Notificación de la calificación; contenido y procedimiento*

"Si el Registrador observare alguna falta en el documento conforme la sección anterior, notificará su calificación por escrito al presentante y al notario autorizante, si así se pidiere en el asiento de presentación, dentro de 60 días de la fecha de dicho asiento de presentación, bien por entrega personal o por correo, para que corrijan la falta durante el plazo de 60 días a partir de la fecha de la notificación.

"La notificación deberá contener todos los motivos legales en que se basa la calificación. La notificación se hará constar por nota fechada en el asiento de presentación y al pie del documento notificado, firmando dicha nota el Registrador, cumplido lo cual quedará perfeccionada.

*"Si se hiciere más de una notificación, se comenzará a contar el plazo desde la última.*

"De no ser subsanado el defecto y expirado el plazo de 60 días, el Registrador extenderá nota de caducidad en el asiento de presentación y al pie del documento." (Énfasis nuestro.)

enviada por el Registrador de la Propiedad al presentante del documento que comienza a correr el término para radicar el escrito de recalificación.

■ Analicemos los hechos en el caso de autos a la luz de estas disposiciones. El Registrador de la Propiedad, a tenor con lo dispuesto en el Art. 69 de la Ley Hipotecaria, *supra*, envió el 2 de abril de 1986 una segunda notificación de calificación. A pesar de que en esta segunda notificación de defecto relacionada con la calificación del documento presentado, reiteró los defectos señalados en la primera notificación, le indicó, además, que se había presentado una hipoteca y que de no corregirse los defectos ésta se inscribiría. También le apercibió que tenía veinte (20) días para presentar escrito de recalificación. El 9 de mayo de 1986 envió una tercera notificación en la cual señaló por primera vez que se trataba de una segregación y que se necesitaba el permiso de A.R.P.E. para inscribir cualquier derecho sobre la parcela segregada. Concluimos que la solicitud de recalificación se presentó en tiempo, ya que se dan las siguientes circunstancias: (1) haberse hecho la segunda y tercera notificación dentro del término de sesenta (60) días de haberse notificado la primera; (2) dentro del término de sesenta (60) días de esta segunda notificación, el 1ro de mayo, el presentante envió por correo certificado los documentos que entendía, corregían el defecto, y (3) cuando el Registrador de la Propiedad había hecho una tercera notificación que señalaba otro defecto el 9 de mayo y el presentante solicitó recalificación el 29 de mayo, dentro de los veinte (20) días de dicha notificación. (⁴) El término de veinte (20) días

---

(⁴) El término de veinte (20) días comenzó a correr a partir de la notificación de la denegatoria. *Royal Bank of Canada* v. *Registrador*, 105 D.P.R. 414, 417 (1976). El cómputo de este término de veinte (20) días se hará según lo dispuesto en el Art. 388 del Código Político, 1 L.P.R.A. sec. 72:

"El tiempo en que cualquier acto prescrito por la ley debe cumplirse, se computará excluyendo el primer día e incluyendo el último, a menos que éste sea día de fiesta, en cuyo caso será también excluido."

para solicitar la recalificación comenzó a correr desde la tercera notificación de calificación enviada por el Registrador de la Propiedad.

## II

Como segundo error alega el Banco Comercial recurrente, que erró el Honorable Registrador de la Propiedad al negarse a inscribir la escritura de arrendamiento presentada, por considerar que en este caso se trata de una segregación para la cual se necesita el correspondiente permiso de A.R.P.E., Ley Núm. 76 de 24 de junio de 1975, Art. 22 (23 L.P.R.A. sec. 71u).

La Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de junio 24 de 1975, según enmendada, en su Art. 3 (23 L.P.R.A. sec. 71b(h)), define lotificación de la siguiente manera:

> (h) "Lotificación" —es la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes, para la venta, traspaso, cesión, arrendamiento, donación, usufructo, uso, censo, fideicomiso, división de herencia o comunidad, o para cualquier otra transacción; la constitución de una comunidad de bienes sobre un solar, predio o parcela de terreno donde se le asignen lotes específicos a los comuneros; así como para la construcción de uno o más edificios; e incluye también urbanización, según se define en este Capítulo, y, además, una mera segregación.

Por otro lado el Art. 22 de la mencionada ley, 23 L.P.R.A. sec. 71u, dispone que a partir de la vigencia de la ley será necesario un permiso de A.R.P.E. para poder efectuar una lotificación, según definida por la ley, y menciona que no tendrá eficacia cualquier escritura pública en que se efectúe una lotificación si la misma no ha sido sometida y aprobada previamente por A.R.P.E., excepto en aquellos casos en que así lo permita el Reglamento de Lotificación. Dicho Reglamento en su Art. 78 menciona una de esas excepciones:

ARTÍCULO 78.—*Casos de Varios Edificios en un Solo Predio*.—En los casos de instituciones u otras organizaciones o entidades cívicas, docentes, religiosas, caritativas, de recreo, industriales, u otras, en que hayan de construirse varios edificios que, aunque físicamente independientes, han de estar funcionalmente relacionados al mismo fin principal, la Junta podrá guiarse por la conveniencia de aceptar su establecimiento en un solo predio de terreno.

En tales casos se someterá a la Junta un anteproyecto que incluya la ubicación de las edificaciones y cualesquiera vías a construirse, acompañándose, además, una descripción del proyecto [y] la relación del uso a dársele a las nuevas edificaciones.

Si cualesquiera parte o partes de tal organización o entidad fuera más tarde cambiada a un uso principal independiente, la parte interesada vendrá obligada a cumplir cabalmente con las disposiciones del presente Reglamento. Reglamento de Lotificación: Reglamento de Planificación Núm. 3 de 1954, Art. 78.

En el presente caso el Banco Comercial recurrente presentó, para su inscripción en el Registro de la Propiedad, una escritura pública de contrato de arrendamiento de una parcela de terreno que forma parte de una finca destinada a funcionar como centro comercial. En el contrato se establece que el recurrente Banco Comercial será responsable de construir la edificación a ser utilizada por ellos y que ésta, luego de terminado el arrendamiento, pasaría a ser propiedad del centro comercial. De lo anterior se desprende que no estamos ante una segregación de una parcela de terreno y sí ante uno de los casos de excepción que permite el Art. 78 del Reglamento de Lotificación, *supra*. Para que estemos ante una segregación es necesario que se *separe* parte de una finca para formar una *finca nueva*. R. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1968, T. II, pág. 519. En los casos en que se efectúe una segregación, la modificación lleva consigo la correspondiente minoración o eliminación de la finca registral correspondiente. Roca Sastre, *op. cit.*, pág. 495. Ninguna

de estas cosas ocurre en el presente caso. La finca principal no sufrió reducción en cabida ni se formó una finca nueva, sino que meramente se arrendó una parcela de terreno, la cual, al finalizar el término del contrato de arrendamiento, pasaría de nuevo a manos del arrendador, incluyendo la edificación que se haya construido en la misma. El contrato de arrendamiento en el presente caso describe detalladamente la organización del Centro Comercial Cagüitas Mall; la misma consiste en alquilar varias parcelas de terreno pertenecientes a la finca principal. En éstas los arrendatarios son responsables de construir las edificaciones comerciales donde ubicarán sus respectivos negocios. Los edificios a construirse en el predio de terreno estarán todos dedicados a un mismo fin principal, el comercio, por lo que es de aplicación la excepción del Art. 78 del Reglamento de Lotificación, *supra*, ya que ésta facilita la construcción de este tipo de proyecto.

En consecuencia, al no tratarse de una segregación estamos ante un arrendamiento, comprendido dentro de la definición de lotificación que da la ley de A.R.P.E., *supra*, que cae bajo las excepciones establecidas por el Reglamento de Planificación, *supra*. Por esto no era necesario presentar el correspondiente permiso de A.R.P.E. como requisito previo para la inscripción de la escritura en el Registro de la Propiedad.

Por todo lo anteriormente expuesto, resolvemos que erró el honorable Registrador al negarse a practicar la inscripción solicitada.

*Se dictará sentencia que revoque la nota recurrida y ordene la inscripción del contrato de arrendamiento.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita.