EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Milagros Infante Robles<br>    Demandante-Peticionaria<br><br>            vs.<br><br> Luis Rafael Maeso Hernández,<br>Etc.<br>        Demandados-Recurridos<br><br> Luis R. Maeso Hernández, Etc.<br>    Demandantes-Recurridos<br><br>            Vs.<br><br> Milagros Infante Robles<br>    Demandada-Peticionaria | Certiorari<br><br>2005 TSPR 118<br><br>165 DPR _____ |

Número del Caso: CC-2004-280

Fecha: 30 de agosto de 2005

Tribunal de Circuito de Apelaciones:

                Región Judicial de San Juan, Panel I

Juez Ponente:

                Hon. Roberto González Rivera

AbogadoS de la Parte Recurrida:

                Lcdo. Raúl J. Tous Bobonis
                Lcdo. Fernando J. Valderrabano

Abogados de la Parte Peticionaria:

                Lcdo. Jorge Luis Guerrero Calderón
                Lcda. María del Carmen Guerrero Espada

Materia: Sentencia Declaratoria y Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|                                      |   |            |
|--------------------------------------|---|------------|
|                                      | * |            |
| Milagros Infante Robles              | * |            |
|    Demandante-Peticionaria | * |            |
|                                      | * | CC-2004-280 |
|      vs.    | * |            |
|                                      | * |            |
| Luis Rafael Maeso Hernández,         | * |            |
| Etc.                                 | * |            |
|    Demandados-Recurridos | * | Certiorari |
|                                      | * |            |
| Luis R. Maeso Hernández, Etc.        | * |            |
|    Demandantes-Recurridos | * |            |
|                                      | * |            |
|      vs.    | * |            |
|                                      | * |            |
| Milagros Infante Robles              | * |            |
|    Demandada-Peticionaria | * |            |
|                                      | * |            |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

SENTENCIA

San Juan, Puerto Rico, a 30 de agosto de 2005.

El caso de autos trata sobre la corrección de determinados asientos en el Registro de la Propiedad.

El Tribunal de Primera Instancia, Sala Superior de San Juan y el Tribunal de Apelaciones, Región Judicial de San Juan, resolvieron a favor de los demandantes, reconociéndoles su derecho a la inscripción registral solicitada por éstos.

Por ser correctos dichos dictámenes, se confirman.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri emitió Opinión de Conformidad. El Juez Presidente señor Hernández Denton y la Juez Asociada señora Fiol Matta están inhibidos.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| | * | |
| Milagros Infante Robles | * | |
|     Demandante-Peticionaria | * | |
| | * | CC-2004-280 |
|            vs. | * | |
| | * | |
| Luis Rafael Maeso Hernández, | * | |
| Etc. | * | |
|     Demandados-Recurridos | * | Certiorari |
| | * | |
| Luis R. Maeso Hernández, Etc. | * | |
|     Demandantes-Recurridos | * | |
| | * | |
|            vs. | * | |
| | * | |
| Milagros Infante Robles | * | |
|     Demandada-Peticionaria | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 30 de agosto de 2005.

El caso de autos presenta la ocasión para precisar unos criterios normativos en cuanto a los efectos sobre terceros de la revocación de una donación por ingratitud, asunto sobre el cual el Tribunal no se ha expresado antes. Veamos.

I

El 23 de febrero de 1990 Milagros Infante Robles (en adelante Infante Robles o la peticionaria) le donó a su hijo, Juan Florencio Santiago Infante, la propiedad objeto de este litigio mediante la Escritura Número 5, otorgada ante el notario Rafael E. Meléndez González. Conforme al tercer apartado de dicha escritura, la donación del inmueble fue hecha de forma puramente graciosa y por mera

liberalidad. La escritura de donación fue inscrita en el Registro de la Propiedad el 30 de abril de 1993 al folio 114 del tomo 698 de Monacillos, finca número 12,566, inscripción sexta.

Años más tarde, el 30 de octubre de 1995, Infante Robles y sus dos hijas presentaron una demanda en contra de Juan Florencio Santiago Infante y solicitaron la revocación de la donación referida y la restitución del dominio sobre el inmueble a Infante Robles. Dicha acción se fundamentó en que Santiago Infante había incurrido en ingratitud, ya que no le había proporcionado alimentos a su progenitora. La demanda fue acompañada con una moción en auxilio de jurisdicción mediante la cual se le pedía al Tribunal de Primera Instancia que dictara una orden para que se le prohibiera a Juan Florencio Santiago Infante enajenar la propiedad. El foro de instancia, aunque eventualmente señaló una vista para discutir dicha moción, nunca emitió la orden solicitada  ni en forma alguna ordenó la anotación de demanda en el Registro de la Propiedad.

El 14 de noviembre de 1995, **quince días después de que se radicara la demanda de revocación de donación**, Juan Florencio Santiago Infante, quien todavía era el titular registral del inmueble, lo vendió por el precio de $78 mil a Luis Maeso Hernández y a su esposa Lizzette Traverso Santiago (en adelante los esposos Maeso Traverso o los recurridos) mediante la Escritura Número 306, otorgada ante el notario Carlos A. Piovanetti Dohnert. Ese mismo día, los esposos Maeso Traverso otorgaron una escritura para

constituir hipoteca sobre la propiedad, a nombre del Banco Popular de Puerto Rico, para garantizar el préstamo que tomaron para financiar la compra de la propiedad.

El 15 de diciembre de 1995, **poco más de un mes después de que se llevara a cabo la compraventa referida**, Infante Robles y sus hijas presentaron en el Registro de la Propiedad una solicitud para que se anotara preventivamente la demanda de revocación de donación. La solicitud estuvo acompañada de copia certificada de la demanda de revocación de donación, mas **no se presentó orden o providencia judicial alguna que la respaldara**.

El 21 de diciembre de 1995, **seis días después de que la aquí peticionaria presentara la solicitud de anotación preventiva de demanda**, los codemandados presentaron en el Registro de la Propiedad las escrituras de compraventa y constitución de hipoteca que habían otorgado el 14 de noviembre del mismo año.

El 14 de octubre de 1996 el Tribunal de Primera Instancia dictó una sentencia en rebeldía a favor de Infante Robles en la acción de revocación de donación que llevó en contra de su hijo. El tribunal accedió a la revocación de la donación, por lo que Juan Florencio Santiago Infante fue desprovisto de su titularidad sobre el inmueble en cuestión. Dicha sentencia no fue apelada, por lo que advino firme y final.

El 4 de abril de 2000 el Registrador hizo la calificación correspondiente y notificó diversas faltas en los documentos presentados. En cuanto al aviso de demanda

de revocación de donación, el Registrador indicó que el mismo tenía que estar acompañado de orden y mandamiento judicial debidamente certificado. En cuanto a las escrituras de compraventa e hipoteca, determinó que el aviso de demanda presentado previamente impedía la inscripción de dichos documentos. Contra dicha determinación, Infante Robles, por conducto de su abogado, interpuso una solicitud de recalificación el 22 de abril de 2000. Junto con dicho escrito de recalificación se presentaron también una orden y un mandamiento de ejecución de sentencia expedidos por el tribunal de instancia los días 14 y 28 de abril de 1997 respectivamente. Tres días después de presentada la solicitud de recalificación, María Milagros Santiago Infante, hija de Infante Robles, presentó en el Registro una instancia jurada mediante la cual solicitó que se convirtiera en inscripción definitiva el aviso de demanda. El 27 de abril de 2000, el abogado de Infante Robles presentó en el Registro un escrito de recalificación complementario en el cual se hace referencia a la instancia mencionada y se pide la inscripción de todos los documentos pendientes.

El 15 de junio de 2000 el Registrador realizó las siguientes inscripciones: 1) anotó el aviso de demanda; 2) inscribió la compraventa a favor de los esposos Maeso Traverso; 3) inscribió la hipoteca a favor del Banco Popular de Puerto Rico; y 4) canceló el aviso de demanda, lo convirtió en inscripción definitiva restituyendo el dominio sobre el inmueble que nos ocupa a Infante Robles y

canceló los asientos correspondientes a la compraventa y a la hipoteca por ser contradictorios al dominio de Infante Robles.

El 22 de octubre de 2001, los esposos Maeso Traverso, la Sociedad Legal de Gananciales integrada por ambos y el Banco Popular de Puerto Rico presentaron una demanda en el Tribunal de Primera Instancia, Sala Superior de Carolina, en contra de Infante Robles y sus hijas. Alegaron que eran los dueños legítimos del inmueble que nos ocupa y que el Banco Popular de Puerto Rico era el titular de una hipoteca sobre el mismo. Los esposos Maeso Traverso fundamentaron su contención en que reunían los requisitos necesarios para ser considerados terceros registrales, según las disposiciones de la Ley Hipotecaria, y que el aviso de demanda presentado por Infante Robles y sus hijas, por no estar acompañado de un mandamiento judicial, no tuvo efecto registral alguno ni era susceptible de corregirse. En consecuencia, solicitaron que se reconociera su derecho de propiedad y que se hiciera la inscripción registral correspondiente.

Infante Robles contestó la demanda y reconvino. Alegó que era la legítima dueña del inmueble toda vez que había anotado preventivamente su reclamación, con rango preferente a la adquisición de los recurridos, lo cual le había dado publicidad registral y notificación a terceros sobre la demanda, privándolos de buena fe. Además, adujo que los recurridos no podían atacar colateralmente la inscripción hecha por el Registrador toda vez que no la

habían cuestionado oportunamente, solicitó la concesión de daños y que se ordenara a los demandantes desocupar la propiedad. Posteriormente, Infante Robles presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual formuló unas alegaciones similares a las de su reconvención. Los esposos Maeso Traverso contestaron la demanda formulando alegaciones similares a las del litigio radicado en Carolina. Luego de varios incidentes procesales, el litigio de Carolina fue trasladado a la Sala de San Juan del Tribunal de Primera Instancia y ambos casos fueron consolidados.

El 7 de junio de 2002 los aquí recurridos, esposos Maeso Traverso y el Banco, presentaron una moción solicitando que se dictase una sentencia sumaria, a lo cual se opuso Infante Robles solicitando, a su vez, que se dictara sentencia sumaria a su favor. En esencia, ambas partes reiteraron los argumentos que habían esgrimido anteriormente, con la excepción de que Infante Robles alegó en este escrito que su hijo y anterior donatario, Juan Florencio Santiago Infante, era parte indispensable en el litigio. Escuchados los argumentos de ambas partes, el Tribunal de Primera Instancia, invocando varios fundamentos, concluyó que no había controversia de hechos esenciales y dictó una sentencia sumaria a favor de los recurridos.

En primer lugar, el foro de instancia concluyó que los esposos Maeso Traverso habían adquirido su derecho de propiedad: de buena fe; a título oneroso; de quien en el

Registro aparecía como su titular con capacidad para enajenarlo sin limitación alguna; **antes de que la solicitud de anotación preventiva de demanda fuera presentada en el Registro**, sin que hubiera duda alguna de que los recurridos no fueron parte, ni fueron notificados, ni se enteraron del pleito de revocación de donación, ni de las intenciones de la donante, con anterioridad a la adquisición de su derecho.

En segundo lugar, en lo que respecta a la anotación preventiva de demanda practicada en el caso de autos, el foro de instancia expresó que, aunque la solicitud de anotación preventiva de demanda llegó al Registro antes que las escrituras de compraventa e hipoteca, dicha solicitud no surtió efecto registral alguno toda vez que <u>no fue acompañada de orden o mandamiento judicial que la avalara</u>, en contravención a lo requerido por la legislación hipotecaria. Dicho defecto, resolvió el foro de instancia, produjo la nulidad del asiento practicado y no era susceptible de corregirse mediante una orden o sentencia judicial, razón por la cual concluyó que había errado el Registrador al convertir la anotación preventiva de demanda en una inscripción definitiva.

Por último, el Tribunal de Primera Instancia rechazó también la contención de que el hijo de Infante Robles y anterior donatario, Juan Florencio Santiago Infante, y su esposa fueran partes indispensables. Razonó el foro de instancia que el presente pleito trataba sobre la corrección y rectificación de asientos en el Registro de la

Propiedad en el cual las únicas partes indispensables eran los titulares registrales que se verían afectados por la rectificación, nadie estaba pidiendo un remedio en contra de Santiago Infante y cualquier posible reclamación en contra suya era prematura e independiente de estos procedimientos por lo que su acumulación era permisible, no compulsoria, y sólo dilataría más los procedimientos. En consonancia con estos razonamientos, el foro de instancia dictó una sentencia a favor de los esposos Maeso Traverso. Insatisfecha con dicho dictamen, Infante Robles apeló ante el Tribunal de Apelaciones. Planteó allí, en síntesis, que el foro de instancia había cometido los siguientes errores: 1) determinar que los esposos Maeso Traverso son los dueños de la vivienda en controversia y el Banco Popular de Puerto Rico, titular de la hipoteca; 2) concluir que los esposos Maeso Traverso eran terceros con buena fe, aunque la anotación preventiva de demanda había llegado al Registro de la Propiedad antes de que ellos presentaran sus documentos; 3) resolver que la solicitud de anotación preventiva de demanda presentada por la peticionaria no estaba exenta del requisito de estar acompañada por una orden o mandamiento judicial; 4) no concluir que los recurridos estaban impedidos de atacar colateralmente la inscripción hecha por el Registrador, toda vez que no la habían cuestionado oportunamente y, en consecuencia, la habían consentido; y 5) resolver que Juan Florencio Santiago Infante y su esposa no eran partes indispensables en el pleito. Considerados los planteamientos de ambas

partes, el foro apelativo intermedio confirmó la sentencia recurrida.

Inconforme con esta determinación, Infante Robles acudió ante nos mediante un recurso de *certiorari* e hizo unos señalamientos de error similares a los que hiciera ante el Tribunal de Apelaciones, referidos en el párrafo anterior. El 14 de junio de 2004, en reconsideración, expedimos el auto solicitado a fin de revisar la sentencia dictada el 30 de enero de 2004 por el Tribunal de Apelaciones. La parte peticionaria sometió un alegato en apoyo a su solicitud de *certiorari* el 20 de agosto de 2004. La parte recurrida presentó un escrito de oposición al *certiorari* el 21 de septiembre de 2004. El 21 de octubre de 2004, la peticionaria presentó una réplica al escrito de oposición de la parte recurrida.

II

A. La donación y su revocación por causa de ingratitud

Conforme al artículo 558 del Código Civil de Puerto Rico, 31 L.P.R.A. § 1981, "[l]a donación es un acto de liberalidad por el cual una persona dispone gratuitamente de una cosa en favor de otra que la acepta". Atendiendo al momento en que están supuestas a tener efectividad, el Código distingue entre las donaciones entre vivos y las donaciones por causa de muerte. *Id*. §§ 1982, 1985. Las donaciones por causa de muerte se rigen por las disposiciones establecidas para la sucesión testamentaria. *Id*. § 1985. Las donaciones que hayan de producir sus

efectos entre vivos, como la ocurrida entre Infante Robles y Juan Florencio Santiago Infante, se rigen por lo dispuesto en las disposiciones generales sobre las obligaciones y los contratos, en todo aquello que no esté dispuesto en la Parte III del Subtítulo 3 del Código Civil, *Id.* §§ 1981-2041, que está dedicada a reglamentar las donaciones. *Id.* § 1986.

A diferencia de las donaciones por causa de muerte, las donaciones inter vivos no pueden ser revocadas por la sola voluntad del donante. <u>Lage v. Central Fed. Savings</u>, 108 D.P.R. 72, 84 (1978); 2 Luis Diez Picazo & Antonio Gullón, *Sistema de Derecho Civil,* 344, 350 (6ta ed. 1989); IV-2 José Ramón Vélez Torres, *Curso de Derecho Civil: Derecho de Contratos,* 229-30 (1990). Las donaciones entre vivos sólo pueden revocarse en los supuestos señalados por el Código Civil. Diez Picazo & Gullón, *supra*, en la pág. 344; Vélez Torres, *supra*, en la pág. 257. Una de las causales de revocación contempladas por el Código Civil es la ingratitud. El Artículo 590 del mencionado cuerpo legal dispone que las donaciones pueden ser revocadas por ingratitud:

> (1) Si el donatario cometiere algún delito contra la persona, la honra o los bienes del donante.

> (2) Si el donatario imputare al donante alguno de los delitos que dan lugar a procedimientos de oficio o acusación pública, aunque lo pruebe; a menos que el delito se hubiese cometido contra el mismo donatario, su mujer o los hijos constituidos bajo su autoridad.

> (3) Si le niega indebidamente los alimentos.

31 L.P.R.A. § 2045 (énfasis suplido).

Se ha establecido que el fundamento de esta causa de revocación es "dotar al donante de un medio coactivo y psicológico para obligar al donatario al cumplimiento de sus deberes morales que el *ius gratitudini* le impone, y que presenta las características de una verdadera sanción penal de tipo económico . . .". Sentencia del Tribunal Supremo, 29 de noviembre de 1969 (R.J., núm. 5837, pág. 3878) (citado en II-2 José Puig Brutau, *Fundamentos de Derecho Civil: Contratos en Particular*, 100 (2da ed. 1982)). En otras palabras, lo que se castiga es el incumplimiento de un deber moral de gratitud surgido del hecho de haber recibido un beneficio sin compensación. Guaroa Velázquez, *Teoría de la donación conforme al Derecho Puertorriqueño*, 27 (1956).

B. Efectos de la revocación de donación por ingratitud

El Artículo 591 del Código Civil de Puerto Rico dispone que:

> Revocada la donación por causa de ingratitud, quedarán, sin embargo, subsistentes las enajenaciones e hipotecas anteriores a la anotación de la demanda de revocación en el Registro de la Propiedad.
>
> Las posteriores serán nulas.

31 L.P.R.A. § 2046.

El artículo 592 del mismo cuerpo legal, por su parte, dispone:

En el caso [a que] se refiere el primer párrafo [del artículo] anterior tendrá derecho el donante para exigir del donatario el valor de los bienes enajenados que no pueda reclamar de los terceros, o la cantidad en que hubiesen sido hipotecados.

Se atenderá al tiempo de la donación para regular el valor de dichos bienes.

*Id.* § 2047.

Los artículos transcritos persiguen dos objetivos: 1) devolver el patrimonio del donante al estado en que se encontraba antes de la donación revocada; y 2) proteger, en aras de la seguridad del tráfico jurídico, al donatario y al tercero que, de buena fe y a título oneroso, adquirió de éste los bienes donados antes de que se anotara en el Registro de la Propiedad la demanda de revocación de donación. VIII-2 Manuel Albaladejo García & Silvia Díaz Alabart, *Comentarios al Código Civil y Compilaciones Forales*, 324-25, 336-37 (1986). Estos objetivos se logran, por un lado, ordenándole al donatario que restituya los bienes donados o el valor de los mismos, si éstos ya no se encontraran en su poder, y, por el otro, dejando firmes e inatacables las enajenaciones hechas por el donatario a terceros de buena fe, antes de que se anotara la demanda en el Registro. *Id.*

En cuanto a las enajenaciones posteriores a la anotación de la demanda de revocación, el propio Código establece que serán nulas. Esto significa que dicha anotación "señala el momento desde el cual las enajenaciones o gravámenes quedarán insubsistentes si se

estima la demanda y se obtiene sentencia favorable". 5 José María Manresa y Navarro, *Comentarios al Código Civil Español*, 265 (Reus 7ma. Ed. 1972). Esta solución se ampara en que, anotada la demanda, se ha publicado la existencia de una causa de revocación y el tercero no puede alegar que la desconocía. *Id.*

De lo anterior también puede deducirse que, aun si no estuviera anotada la demanda ni constaran los defectos expresamente del Registro, la enajenación no podría subsistir si el tercero conoció o debió haber conocido de la demanda o causa de revocación. Esta conclusión, según la doctrina, es consecuencia de la aplicación del principio de buena fe el cual abarca toda actividad jurídica. Albaladejo García & Díaz Albart, *supra*, en las págs. 336-37; Véase, Velilla v. Pueblo Supermarket, Inc., 111 D.P.R. 585, 587-88 (1981).

C. La buena fe

Partiendo entonces de la premisa de que el requisito de buena fe es una exigencia general de nuestro derecho que se extiende a todo el ordenamiento jurídico, la "eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares". Velilla v. Pueblo Supermarket, *supra*. En el contexto de la Ley Hipotecaria, el artículo 105 de dicho cuerpo legal establece lo siguiente:

A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de

quienes intervengan como partes en dichos actos o contratos, <u>el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho</u>, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.

Al respecto, ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en [el artículo 127] de esta ley, que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del trasmitente [sic].

La buena fe del tercero se presume siempre mientras no se prueba que <u>al adquirir</u> conocía la falta de exactitud del Registro.

El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.

En ningún caso afectarán a tercero los derechos meramente mencionados o la indebida constancia de obligaciones.
30 L.P.R.A. § 2355 (énfasis suplido).

La disposición transcrita incorpora a nuestro ordenamiento jurídico inmobiliario el principio de fe pública registral. A través de dicho principio quedan protegidos los terceros que por medio de un negocio jurídico válido adquieran un derecho confiando en el contenido del Registro de la Propiedad. <u>Banco Santander v. Rosario Cirino</u>, 126 D.P.R. 591, 601 (1990). Para ser acreedor de la protección del Registro, uno de los requisitos que tiene que cumplir el tercer adquirente

es el de buena fe, la cual se ha definido como el "desconocimiento por el tercer adquirente, <u>en el momento de la adquisición</u>, de la inexactitud registral y de los vicios que pueden anular, rescindir, resolver o revocar la titularidad del transferente". <u>Mundo v. Fuster</u>, 87 D.P.R. 363, 376 (1963)(citando a Téllez Miguélez, *Legislación Hipotecaria,* 130 (1949)) (énfasis suplido).

Por otra parte, hemos resuelto que para que dicho desconocimiento sea sinónimo de buena fe, es necesario que el tercero haya sido diligente al tratar de enterarse de quién es el verdadero dueño de la propiedad. <u>Banco Santander v. Rosario Cirino</u>, *supra.* En consecuencia, además de cerciorarse de quién es el dueño registral del derecho que adquiere, el tercero, para tener buena fe y ser amparado por el Registro, no debe tener ni conocimiento personal del defecto que produce la nulidad o revocación del título de su transferente, ni medios racionales o motivos suficientes para conocer del mismo. *Id.*; <u>Mundo v. Fuster</u>, *supra.* "[N]o se pueden desvincular los principios generales del derecho hipotecario de la buena fe en la contratación". <u>Banco Santander v. Rosario Cirino</u>, *supra.*

Además de lo anterior, hemos señalado que para tener derecho a la protección registral **"[c]on el requisito de buena fe <u>sólo tiene que cumplir el tercer adquirente</u> y no el transferente. . . <u>en el momento en que, de acuerdo con el Código Civil, 'queda concluso el negocio jurídico de adquisición por el tercero'</u>"**. <u>Banco Santander v. Rosario</u>

<u>Cirino</u>, *supra*, (citando a 1 R.M. Roca Sastre, *Derecho Hipotecario,* 695 (7ma. ed. 1979).

Finalmente, hay que tener presente que, según surge del propio artículo 105 de la Ley Hipotecaria, 30 L.P.R.A. § 2355, se presume la buena fe del tercer adquirente. Por lo tanto, le corresponde a quien sostenga lo contrario probar que el tercero conocía de la inexactitud del registro y que, por lo tanto, tenía mala fe. <u>Banco Santander v. Rosario Cirino</u>, *supra*.

D. <u>La anotación preventiva de demanda</u>

Hemos definido la anotación preventiva de demanda, citando a Roca Sastre y a Roca Sastre-Muncunill, como "un asiento registral que publica el hecho de haberse interpuesto demanda que ha iniciado un proceso judicial, generalmente civil, en el que se ejercita alguna pretensión procesal relativa al *dominio o derechos reales sobre fincas*". <u>Pérez Mercado v. Martínez Rondón</u>, 130 D.P.R. 134, 144 (1992) (citando a IV-1 R.M. Roca Sastre y L.M. Roca Sastre Muncunill, *Derecho Hipotecario*, 38 (7ma. ed. Bosch 1979)). Su función consiste en avisar que la titularidad del derecho inscrito, sobre el cual pesa la anotación, está subordinada a la resolución de un pleito. <u>Segarra v. Vda. De Llórens</u>, 99 D.P.R. 60, 69 (1970). De esta forma, los <u>futuros adquirentes</u>, al estar prevenidos de la existencia de un litigio que podría resultar lesivo a sus intereses, no podrán alegar desconocimiento de las causas de nulidad de los títulos inscritos. *Id.*

Por otra parte, la anotación preventiva de demanda preserva la efectividad en la administración de la justicia al evitar que las sentencias judiciales resulten inoficiosas por actos del demandado que impidan la ejecución de un fallo. *Id.* "Su efecto consiste 'en asegurar un rango al derecho real que como consecuencia del litigio pueda constituirse, asegurando la retroactividad del mismo <u>al momento de la anotación de la demanda</u> frente a los terceros que hayan inscrito en el intermedio algún derecho' (Cossío). En principio, carece de los demás efectos, defensivos y ofensivos, de una inscripción". <u>Echevarría Jiménez v. Sucn. Pérez Meri</u>, 123 D.P.R. 664, 678 (1989) (citando a J.L. Lacruz Berdejo y F.A. Sancho Rebullida, *Derecho Inmobiliario Registral,* 269 (Bosch 1977)).

Los artículos 112 y 113 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. §§ 2401-2402, establecen las reglas y el procedimiento a seguirse para poder obtener la anotación preventiva de una demanda. El mencionado artículo 112, en lo aquí pertinente, establece lo siguiente:

Podrán pedir anotación preventiva de sus respectivos derechos en el Registro:

> 1ro. El que reclamare en juicio la propiedad de bienes inmuebles o la constitución, declaración, modificación o extinción de cualquier derecho registrable o el que reclamare en alguna acción que afecte al título de propiedad inmueble, o sobre la validez y eficacia, o invalidez o ineficacia, del título o títulos referentes a la adquisición, constitución, declaración, modificación o extinción de los precitados derechos registrables.

*Id.* § 2401.

El artículo 113, por su parte, cualifica lo establecido en el inciso primero del citado artículo 112 al disponer:

> En el caso del número uno de la sección anterior, **no podrá hacerse la anotación preventiva sino cuando se ordene por providencia judicial dictada a instancia de parte legítima y en virtud de documento bastante al prudente arbitrio del juzgador**, excepto cuando la acción tenga un derecho real inscrito como base para su ejercicio, en cuyo caso será suficiente para su anotación en el Registro la presentación de copia certificada de la demanda.

*Id.* § 2402 (énfasis suplido).

Puede colegirse de lo anterior que, para obtener la anotación preventiva de una demanda en el Registro, la Ley Hipotecaria exige: 1) que la acción pueda incidir sobre la titularidad o algún otro derecho real relacionado al inmueble sobre el cual recaería la anotación; y 2) la intervención de un Juez que avale la anotación solicitada mediante orden o mandamiento, salvo cuando la acción esté basada en un derecho real inscrito. Según hemos resuelto, el presentante del aviso debe cumplir a cabalidad con las reglas esbozadas anteriormente. La falta de cumplimiento con este procedimiento conlleva la nulidad del asiento practicado. <u>Pérez Mercado v. Martínez Rondón</u>, *supra*. En consecuencia, un aviso de demanda que no esté acompañado de orden o mandamiento judicial, y que no esté exceptuado de ese requisito, no produce efectos registrales. <u>E.R. Foods,</u>

*Inc. v. Lee Optical*, 117 D.P.R. 566, 569-70 (1986). Dicha omisión es insubsanable. *Id.* en la pág. 570.

En cuanto a la excepción al requisito de que la solicitud de anotación preventiva de demanda esté acompañada de una orden judicial, contenida en el citado artículo 113 de la Ley Hipotecaria, hemos resuelto que ésta debe ser interpretada restrictivamente. Banco Central y Economías v. Registrador, 111 D.P.R. 773, 778 (1981).

E. Calificación del Registrador

El artículo 69 de la Ley Hipotecaria, en parte, establece lo siguiente:

> Si el Registrador observare alguna falta en el documento, exclusivamente conforme [al artículo 68 de esta ley], notificará su calificación por escrito al notario autorizante y al presentante, si éste lo solicita en la minuta, dentro de sesenta (60) días de la fecha de dicho asiento de presentación, bien por entrega personal o por correo, o por la vía electrónica, para que corrijan la falta durante el plazo de sesenta (60) días a partir de la fecha de notificación. Si se hiciere más de una notificación, se comenzará a contar el plazo desde la última [notificación] hecha al notario.
>
> La notificación deberá contener todos los motivos legales en que se basa la calificación. La notificación se hará constar por nota fechada en el asiento de presentación y al pie del documento notificado, firmando dicha nota el Registrador, cumplido [el] cual quedará perfeccionada.
>
> De no ser subsanado el defecto y expirado el plazo de sesenta (60) días, el Registrador extenderá nota de caducidad en el asiento de presentación y al pie del documento.
>
> 30 L.P.R.A. § 2272.

El artículo 70 de la Ley Hipotecaria, por su parte, lee de la siguiente manera:

> No obstante lo dispuesto en [el artículo 70 de esta Ley], el presentante o el interesado que no esté conforme con la calificación del registrador podrá, dentro del término improrrogable de [los] veinte (20) días siguientes a la fecha de la notificación, radicar personalmente, o por la vía electrónica, con el registrador o remitirlo por correo certificado, un escrito solicitando recalificación, exponiendo sus objeciones a la calificación, los fundamentos en que apoya su recurso y una súplica específica de lo que interesa. Transcurridos los veinte (20) días se entenderán consentidos los defectos señalados por el registrador.
>
> Si se hubiere consentido la calificación del registrador con arreglo a lo dispuesto en el párrafo anterior y el interesado intentase corregir los defectos apuntados dentro del término que concede [el artículo 69 de esta ley], sólo podrá recurrir gubernativamente de la denegatoria al efecto de determinar si los defectos señalados fueron corregidos.
>
> *Id.* § 2273.

Según se desprende del citado artículo 69, notificadas por el Registrador una o más faltas, si la parte interesada no las corrige dentro del término señalado se extenderá nota de caducidad sobre el asiento de presentación correspondiente. En cuanto al artículo 70, hemos resuelto que su "propósito es darle la oportunidad al Registrador de reconsiderar cualquier calificación errónea". Bidot v. Registrador, 115 D.P.R. 276, 277 (1984). Dicha disposición establece que transcurridos veinte (20) días desde la notificación de la calificación, sin que el interesado recurra de la misma mediante escrito de recalificación, se entenderá que los defectos señalados por el Registrador

fueron consentidos. En cuanto al término señalado, hemos establecido que el mismo comienza a transcurrir a partir de la notificación de la denegatoria por parte del Registrador. Banco Comercial v. Registrador, 118 D.P.R. 773, 777-79 (1984).

F. Parte indispensable

El concepto de "parte indispensable" está contenido en la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 16.1. Dicha regla establece lo siguiente: "Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada". Id. (énfasis suplido). Este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley, y su función es proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso y evitar la multiplicidad de pleitos. Municipio de San Juan v. Bosque Real S.E., res. el 4 de marzo de 2003, 158 D.P.R. ____, 2003 TSPR 31, 2003 JTS 33, 628. Una parte indispensable es "aquella cuyos derechos e intereses podrían quedar **destruidos o inevitablemente afectados** por una sentencia dictada estando esa persona ausente del litigio". Municipio de San Juan v. Bosque Real S.E., supra; Deliz Muñoz v. Igartúa Muñoz, res. el 23 de enero de 2003,

158 D.P.R. ____, 2003 TSPR 4, 2003 JTS 7, 432; Fuentes v. Tribunal de Distrito, 73 D.P.R. 959, 981 (1952).

Con relación al requisito de "interés común" contenido en la citada Regla 16.1, hemos establecido que no es cualquier interés en el pleito, sino aquel que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. Romero v. Reyes Rivera, res. el 28 de abril de 2005, 163 D.P.R. ____, 2005 TSPR 58, 2005 JTS 66, 1168; Municipio de San Juan v. Bosque Real S.E., supra; Deliz Muñoz v. Igartúa Muñoz, supra; Hernández Agosto v. López Nieves, 114 D.P.R. 601, 605, 607 (1983). Dicho interés, además, tiene que ser real e inmediato. Romero v. Reyes Rivera, supra; Deliz Muñoz v. Igartúa Muñoz, supra.

En cuanto a la frase "sin cuya presencia no pueda adjudicarse la controversia", hemos señalado que "excepto en aquellas circunstancias en las que la adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato que ésta tiene en el pleito, en raras ocasiones será imposible resolver la controversia sin su presencia. Deliz Muñoz v. Igartúa Muñoz, supra; Municipio de Ponce v. Autoridad de Carreteras, res. el 29 de diciembre de 2000, 153 D.P.R. ____, 2000 TSPR 194, 2001 JTS 3.

En lo que respecta a la frase "remedio completo", la misma tiene un significado especial, y no debe interpretarse conforme a criterios estrictamente

semánticos. Municipio de San Juan v. Bosque Real S.E., *supra*. "El remedio completo a que se refiere la Regla 16 alude al remedio entre las personas y entidades que ya son partes en el pleito y no al obtenible entre una parte y el ausente". *Id.*; Hernández Agosto v. López Nieves, *supra*. Para determinar si se debe acumular una parte, es necesario evaluar los hechos particulares de cada caso. En dicho análisis deben tomarse en cuenta factores, tales como: tiempo, lugar, modo, clase de derechos, alegaciones, prueba, intereses en conflicto, formalidad y resultado. Municipio de San Juan v. Bosque Real S.E., *supra*.

## III

En sus primeros tres señalamientos, en síntesis, el peticionario le imputa al Tribunal Apelativo la comisión de los siguientes errores: 1) determinar que los esposos Maeso Traverso son los dueños de la vivienda en controversia y el Banco Popular de Puerto Rico, titular de la hipoteca; 2) concluir que los esposos Maeso Traverso eran terceros con buena fe, aunque la anotación preventiva de demanda había llegado al Registro de la Propiedad antes que ellos presentaran sus documentos; y 3) resolver que la solicitud de anotación preventiva de demanda presentada por la peticionaria no estaba exenta del requisito de estar acompañada por una orden o mandamiento judicial. Discutiremos dichos señalamientos en conjunto porque están íntimamente relacionados.

En el caso de autos, es un hecho evidente que los recurridos adquirieron sus derechos de buena fe y a título oneroso de quien en el Registro de la Propiedad aparecía con capacidad para transmitirlos. Al momento de otorgarse las escrituras de compraventa e hipoteca, Juan Florencio Santiago Infante era el titular registral del inmueble en controversia, sin que apareciera del Registro limitación alguna a su capacidad de enajenarlo, ni que su derecho estuviera amenazado de revocación por una demanda. Además, no se ha probado que al momento de su adquisición los recurridos tuvieran o debieran haber tenido conocimiento de la pendencia de dicha reclamación por algún otro medio.

La peticionaria arguye que los esposos Maeso-Traverso no son terceros con buena fe porque cuando fueron a inscribir las escrituras de compraventa e hipoteca, ya la anotación preventiva de demanda estaba presentada en el Registro de la Propiedad. Sostiene, además, que los esposos compradores no son acreedores de la protección del ordenamiento, pues adquirieron sus derechos del vendedor, quien, al ser adquiriente a título gratuito, no podía él mismo gozar de dicha protección.

Según se expuso anteriormente, el ordenamiento jurídico fija el momento de la adquisición del derecho por el tercero como aquél al que hay que remitirse para juzgar si éste tiene la buena fe necesaria para ser protegido en su adquisición. Banco Santander v. Rosario Cirino, *supra*. Tal conclusión puede deducirse del texto claro del artículo 105 de la Ley Hipotecaria, el cual establece en su tercer

párrafo que "[l]a buena fe del tercero se presume siempre mientras no se prueba que <u>al adquirir</u> conocía la falta de exactitud del Registro". 30 L.P.R.A. § 2355 (énfasis suplido). Por otro lado, aunque la persona de quien los recurridos adquirieron su derecho de propiedad había obtenido el mismo a título gratuito, ellos lo adquirieron a título oneroso, por lo cual son acreedores de la protección tanto del Registro como del Código Civil. Véanse, *Id.*; 31 L.P.R.A. sec. 2046; Albaladejo García & Díaz Albart, *supra*, en las págs. 325, 337.

Infante Robles alega también que su solicitud de anotación preventiva de demanda tenía rango preferente a las escrituras de compraventa e hipoteca, debido a que dicha solicitud había llegado antes que las escrituras al Registro. No obstante, dicha solicitud no estuvo acompañada de orden o mandamiento judicial que la avalara, en contravención a lo requerido <u>expresamente</u> por el artículo 113 de la Ley Hipotecaria. 30 L.P.R.A. § 2402. La falta de cumplimiento con dicho requisito conllevó la nulidad del asiento de presentación practicado para la solicitud de anotación que, por ello, no podía tener efectos registrales. <u>Pérez Mercado v. Martínez Rondón</u>, *supra*; <u>E.R. Foods, Inc. v. Lee Optical</u>, *supra*. El hecho de que la peticionaria, cuando el Registrador le notificó el defecto, hubiera presentado un escrito de recalificación, acompañado de la sentencia en el pleito de revocación de donación, no altera esta conclusión debido a que <u>la omisión no era susceptible de corregirse</u>. *Id.* en la pág. 570. Permitir la

corrección de dicha falta con efectos retroactivos equivaldría a suprimir el requisito esencial de que la anotación preventiva de demanda esté acompañada del documento judicial correspondiente, toda vez que "cualquiera podría presentar copia de una demanda certificada en el Registro o un aviso de demanda y luego, [años] después --como en el caso de autos-- corregir esa falta" conservando el mismo rango que el día de la presentación de la solicitud defectuosa. *Id.* en la pág. 569.

La peticionaria también argumenta que su solicitud de anotación preventiva de demanda, por estar basada en un derecho real inscrito, estaba eximida de cumplir con el requisito de orden judicial previa.

Como se señaló antes, el artículo 113 de la Ley Hipotecaria, por excepción, permite que se haga la anotación preventiva de demanda sin tener que acompañar orden o mandamiento judicial alguno cuando la acción esté basada en un derecho real inscrito. 30 L.P.R.A. § 2402. Evidentemente, la demanda de revocación de donación incoada por la peticionaria no está cobijada por dicha excepción. Al momento de hacer su solicitud, Infante Robles no tenía ningún derecho real inscrito a su favor sobre la propiedad objeto de este litigio. El objetivo de la demanda de revocación de donación que presentó era precisamente recuperar un derecho de propiedad que ya no le pertenecía y que constaba inscrito a nombre de otra persona. La excepción invocada no puede extenderse a derechos

eventuales o contingentes que dependen de una conducta extra-registral. Esta excepción debe ser interpretada restrictivamente. Banco Central y Economías v. Registrador, *supra*. Los errores señalados no fueron cometidos.

En su cuarto señalamiento de error, la peticionaria argumenta que los recurridos estaban impedidos de atacar colateralmente la inscripción hecha por el Registrador, toda vez que no la habían cuestionado oportunamente y, en consecuencia, la habían consentido. No le asiste la razón.

La solicitud de recalificación es un recurso que tiene el presentante de un documento u otra persona interesada cuando le han notificado faltas al documento que interesa inscribir y no está conforme con los fundamentos de la denegatoria del Registrador. Véase, artículo 70 de la Ley Hipotecaria, 30 L.P.R.A. § 2273. En el caso que nos ocupa, las faltas notificadas por el Registrador se referían a la ausencia de documentos judiciales que acompañaran la anotación preventiva de demanda. A las escrituras de compraventa e hipoteca el Registrador no les señaló defecto alguno. En la notificación a los recurridos, el Registrador les informó que la solicitud de anotación de la recurrida, que estaba presentada anteriormente y con el término para presentar recurso de recalificación por delante, impedía la inscripción de sus documentos. En esta situación, una vez caducara el asiento de presentación del aviso de demanda, al cual se le había notificado un defecto con el cual los recurridos estaban de acuerdo, procedía que las escrituras de los recurridos fuesen inscritas debido a que su

inscripción no dependía del aviso de demanda y el Registrador no les había encontrado defecto.

De lo anterior surge que era a Infante Robles a quien le correspondía solicitar una recalificación. No así a los recurridos quienes no tenían porqué solicitar la recalificación por una anotación preventiva errónea que era adversa a sus documentos. El error de calificación del Registrador ocurrió cuando decidió inscribir con rango preferente el aviso de demanda defectuoso y canceló los asientos de los recurridos. Sin embargo, no se ha evidenciado que esta última calificación fuera notificada a los recurridos. A falta de dicha notificación, no puede entenderse que el término para recalificar haya transcurrido ni, por ende, que los recurridos hayan consentido a la calificación referida. Véase, Banco Comercial v. Registrador, *supra*.

En su quinto y último señalamiento de error, la peticionaria le imputa al foro apelativo haber incidido al resolver que Juan Florencio Santiago Infante y su esposa no eran partes indispensables en este pleito. En apoyo de su contención, Infante Robles sostiene que los recurridos adquirieron de Santiago Infante los derechos que reclaman en este caso y que existe una gran probabilidad de que los recurridos tengan una causa acción en contra de él una vez termine este pleito. De esta forma, se abonaría a la economía procesal y se evitaría la multiplicidad de pleitos.

En el caso de autos, ninguna de las partes ha solicitado, ni puede solicitar en estos momentos, remedio alguno en contra de Santiago Infante o su esposa. La causa de acción presentada por los recurridos, esposos Maeso Traverso y Banco Popular, es propiamente una de corrección y rectificación de asientos en el Registro de la Propiedad. Por ello, el remedio solicitado se exige contra Milagros Infante Robles, persona que, al momento de incoarse la acción, figuraba en el Registro como dueña del derecho de propiedad que se disputa. Si bien Juan Florencio Santiago Infante fue titular registral del mencionado derecho en el pasado, tal titularidad fue revocada por causa de ingratitud, mediante sentencia judicial final y firme, según  lo autoriza el artículo 590 del Código Civil, 31 L.P.R.A. § 2045, y Santiago Infante nada tiene que ver ya con respecto al asiento registral en cuestión. En consecuencia, la presencia de Santiago Infante no es indispensable para que la controversia registral pueda adjudicarse y se imparta un remedio entre las personas que ya son partes en este pleito.

Ciertamente, la parte que resulte perdidosa en este litigio podría tener una causa de acción en contra de Santiago Infante. En el caso de Infante Robles, podría incoar una acción para reclamarle a éste el valor de la propiedad enajenada.[1] No obstante, dicha causa de acción es

---

[1] Los ya citados artículos 591 y 592 del Código Civil de Puerto Rico, que regulan los efectos de la revocación de donación por ingratitud, establecen:

contingente y, por ello, independiente del presente litigio. Según hemos resuelto en el contexto de acciones en las cuales se evaluaba la validez de documentos notariales sin que el notario autorizante fuera parte, el hecho de que el resultado de un litigio pueda conferir una causa de acción en contra de un tercero que no es parte, no le confiere automáticamente a dicho tercero la condición de parte indispensable. Romero v. Reyes Rivera, *supra*; Deliz Muñoz v. Igartúa Muñoz, *supra*. Es menester recordar que para que el tercero ausente sea parte indispensable, el posible perjuicio que pudiera sufrir debe ser real e inmediato, no contingente, ni supeditado a que ocurran en el futuro una serie de eventos y circunstancias que no tienen que darse necesariamente. Deliz Muñoz v. Igartúa Muñoz, *supra*. A la luz de estos razonamientos, Juan

---

> Revocada la donación por causa de ingratitud, quedarán, sin embargo, subsistentes las enajenaciones e hipotecas anteriores a la anotación de la demanda de revocación en el Registro de la Propiedad.
>
> Las posteriores serán nulas.
>
> 31 L.P.R.A. § 2046.
>
> En el caso [a que] se refiere el primer párrafo [del artículo] anterior tendrá derecho el donante para exigir del donatario el valor de los bienes enajenados que no pueda reclamar de los terceros, o la cantidad en que hubiesen sido hipotecados.
>
> Se atenderá al tiempo de la donación para regular el valor de dichos bienes.
>
> *Id.* § 2047.

Florencio Santiago Infante no es parte indispensable en este litigio.

Por los fundamentos expuestos, estoy conforme con que se dicte una sentencia para confirmar el dictamen del foro apelativo, como lo ha hecho la mayoría del Tribunal en este caso.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO