EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Héctor R. López García<br><br>Peticionario<br><br>v.<br><br>Laura I. López García<br><br>Recurrida | Certiorari<br><br>2018 TSPR 57<br><br>200 DPR ____ |

Número del Caso: CC-2014-426

Fecha: 10 de abril de 2018

Tribunal de Apelaciones:

      Región Judicial de San Juan

Abogado de la parte peticionaria:

      Lcdo. Víctor Rivera Torres

Abogado de la parte recurrida:

      Lcdo. Guillermo Ramos Luiña

Materia: Derecho procesal civil: En cualquier pleito donde se cuestione la validez de un negocio jurídico relacionado a un bien inmueble, se considerarán partes indispensables aquellas personas que, luego de la inscripción en el Registro de la Propiedad del asiento correspondiente al negocio jurídico en controversia, hayan adquirido algún derecho real o interés en el inmueble en cuestión que surja del aludido Registro.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor R. López García

    Peticionario

        v.

Laura I. López García

    Recurrida

CC-2014-0426      *Certiorari*

Opinión del Tribunal emitida por el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 10 de abril de 2018.

En el día de hoy debemos determinar si, conforme a lo dispuesto en la Regla 49.2 de las de Procedimiento Civil de 2009, *infra*, procede el relevo de cierta sentencia, bajo el fundamento de falta de parte indispensable. Ello, cuando se alega que en el pleito para declarar la nulidad de una escritura de donación de determinada propiedad no se incluyeron a aquellas personas que podrían haber adquirido un interés real sobre la propiedad afectada por la referida escritura.

Adelantamos que, conforme a la norma pautada por este Tribunal en *García Colón v. Sucn. González*, *infra*, en cualquier pleito donde se cuestione la validez de un negocio jurídico relacionado a un bien inmueble, se considerarán partes indispensables

aquellas personas que -- posterior a la inscripción del asiento correspondiente al referido negocio en el Registro de la Propiedad -- hayan adquirido algún derecho real o interés en el inmueble en cuestión que surja del mencionado Registro. Veamos.

I.

Conforme se desprende del expediente que obra en nuestro poder, el señor Héctor Ramón López García (en adelante, "el señor López García" o "el peticionario") y la señora Laura Ivelisse López García (en adelante, "la señora López García"), son hermanos entre sí, así como coherederos del señor José A. López Castro, padre de ambos. El señor López Castro falleció allá para el 1974, sin haber otorgado testamento, por lo que su fallecimiento tuvo el efecto de crear dos comunidades: la comunidad postganancial con su viuda y madre de los hermanos López García, la señora Monserrate García González, y la comunidad hereditaria entre sus herederos[1].

Uno de los bienes pertenecientes a la sucesión López Castro lo era una finca localizada en el Barrio Mamey y Lirios de Juncos, con una cabida de 78.68 cuerdas. En 1987, el peticionario y la señora López García obtuvieron la totalidad de participación en relación a esta finca, a través de sus

---

[1] Inicialmente, la sucesión del señor José A. López Castro estuvo compuesta por sus tres hijos: José Antonio; Laura Ivelisse, la recurrida; y Héctor Ramón, el peticionario, todos de apellidos López García. No obstante, mediante la *Escritura de Ratificación de Venta Judicial y Cesión de Derechos y Acciones Hereditarias* de 11 de marzo de 1986 el coheredero José Antonio López García cedió su participación hereditaria indivisa sobre los bienes de la comunidad hereditaria a favor de sus hermanos, Héctor Ramón y Laura Ivelisse, y su madre, la señora Monserrate García González.

respectivas participaciones en la herencia de su padre y por medio de una donación que les hizo su madre, la señora García González, de su participación postganancial y de cierta cuota que ésta había adquirido de otro de sus hijos. Eventualmente, y en lo pertinente a la controversia ante nuestra consideración, el terreno en cuestión fue segregado en cuatro fincas, siendo una de éstas el Remanente II (Este), con una cabida de 26.21 cuerdas.

Realizada la referida segregación, los hermanos López García suscribieron la Escritura Núm. 75 del 15 de octubre de 1996, *Escritura de Donación*, ante el Notario Cristóbal Colón. Mediante esta, la señora López García le donó al peticionario su participación del cincuenta por ciento (50%) sobre el Remanente II (Este) (en adelante, "*Escritura de Donación*").[2]

Años más tarde, el 22 de septiembre de 2004, para ser específicos, la señora López García presentó una demanda sobre nulidad de contrato, rendimiento de cuentas, y daños y perjuicios contra el señor López García (en adelante, "caso civil núm. DAC2005-0448"). En la misma, solicitó que se anulara la *Escritura de Donación* suscrita por ambos hermanos relacionada al Remanente II (Este). La señora López García sostuvo que su hermano, el peticionario, incurrió en dolo para obtener su consentimiento. Además, arguyó que procedía la nulidad de la referida escritura por contravenir las

---

[2] Posteriormente, mediante la otorgación de la Escritura Núm. 20 del 29 de octubre de 1998, ante el Notario Enrique Umpierre Suárez, el señor Héctor López García vendió el Remanente II a RJ Development, SE, por la suma de $1,450,000. *Véase*, Apéndice IV, pág. 143

disposiciones del Art. 95 de la antigua Ley Hipotecaria, 30 LPRA ant. sec. 2316, toda vez que se enajenó una cuota indivisa sobre un bien específico del caudal hereditario del causante sin que se hubiera efectuado una partición hereditaria.

Evaluados los planteamientos de las partes, el 18 de abril de 2007 el Tribunal de Primera Instancia dictó una sentencia parcial mediante la cual desestimó la acción de nulidad por dolo, bajo el fundamento de prescripción. Dicho dictamen fue confirmado por el Tribunal de Apelaciones, por lo que la referida sentencia parcial advino final y firme.

Posteriormente, y en lo referente al fundamento de que la *Escritura de Donación* es nula, porque se había otorgado el referido documento sin que se hubiese realizado la partición hereditaria -- lo que constituía una enajenación de una cuota indivisa sobre un bien específico del caudal hereditario, -- el 14 de julio de 2011 el Tribunal de Primera Instancia dictó una segunda sentencia, acogiendo los planteamientos de la señora López García. Al así hacerlo, el foro primario resolvió que la donación realizada a favor del peticionario constituyó propiamente una enajenación de una cuota común *pro indivisa* de un bien inmueble en específico del caudal hereditario, por lo que la señora López García estaba impedida de ceder tal participación.

Inconforme con dicho proceder, el señor López García acudió al Tribunal de Apelaciones. No obstante, dicho foro desestimó el recurso incoado por éste, ya que el mismo se

presentó fuera del plazo jurisdiccional de treinta (30) días que se tiene para ello, conforme a lo dispuesto por el Reglamento de ese Tribunal. Tras acudir en *certiorari* ante nos, en aquel entonces denegamos expedir el mismo, así como las dos solicitudes de reconsideración presentadas. De esa forma, la segunda sentencia parcial emitida por el Tribunal de Primera Instancia también advino final y firme.

Así las cosas, el 1 de mayo de 2013 el señor López García presentó una demanda sobre acción independiente bajo la Regla 49.2 de las de Procedimiento Civil, *infra*, la cual dio génesis al asunto ante nuestra consideración. En síntesis, solicitó que se dejara sin efecto la sentencia de nulidad antes mencionada, bajo los fundamentos de falta de parte indispensable y fraude al tribunal. En cuanto al asunto que nos ocupa -- a saber, la alegada falta de parte indispensable -- el peticionario alegó que, en la acción de nulidad promovida por la señora López García, ésta no incluyó como parte a los adquirientes posteriores de la propiedad donada a favor del señor López García, quienes figuraban como titulares registrales en el Registro de Propiedad. Asimismo, alegó que no se incluyeron a las personas que adquirieron los solares en una urbanización que se construyó en la finca que fue objeto de la escritura declarada nula, ni a las entidades bancarias que proveyeron ayuda financiera a los desarrolladores del terreno.

Oportunamente, y al amparo de la Regla 10.2 de las de Procedimiento Civil, *infra*, la señora López García solicitó la desestimación de la referida demanda. Sostuvo, en lo aquí pertinente, que, en el presente caso, no existía parte indispensable que tuviera que ser protegida, por lo que la sentencia de nulidad no debía dejarse sin efecto.

Examinada la referida solicitud, el Tribunal de Primera Instancia determinó que, en efecto, procedía la desestimación de la acción independiente de nulidad incoada por el señor López García. Ello, tras concluir que este último tuvo la oportunidad de litigar las mismas controversias en el pleito anterior, por lo que ese foro entendió que la acción ante su consideración constituía un "*subterfugio para continuar litigando una controversia que ya fue resuelta* […]".[3] Bajo este fundamento, el Tribunal de Primera Instancia concluyó que el señor López García no estableció la existencia de circunstancias que justificaran el relevo de la sentencia.

Insatisfecho con lo resuelto por el foro primario, el señor López García acudió al Tribunal de Apelaciones. Allí, en esencia, sostuvo que el foro primario erró al determinar que no existía parte indispensable que hubiese sido afectada por la sentencia cuya nulidad se solicita y al no dejar sin efecto la misma. Oportunamente, la señora López García acudió ante dicho foro y presentó sus argumentos en oposición.

---

[3] *Véase* Apéndice de *Certiorari*, a la pág. 172.

Tras estudiar lo expuesto por las partes en sus respectivos alegatos, el Tribunal de Apelaciones confirmó la sentencia del foro primario; lo anterior, tras concluir que la teoría legal del peticionario era una errada, al suponer que la falta de partición hereditaria "*surgía de forma clara y expresa del Registro de la Propiedad y, por ello, concluir que los terceros adquirentes se verían afectados en sus derechos propietarios*".[4] Así, tras sentenciar que existe una presunción de certeza y corrección en cuanto a las constancias que surgen del Registro de la Propiedad, el foro apelativo intermedio concluyó que no hubo omisión de parte indispensable en el pleito donde se decretó la nulidad de la *Escritura de Donación*.

En desacuerdo con lo resuelto por el Tribunal de Apelaciones, el señor López García comparece ante nos. Arguye que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones erraron al determinar que no existían partes indispensables en el pleito de nulidad de *Escritura de Donación*. Sostiene que el foro apelativo intermedio erró al no reconocer el efecto registral de la sentencia decretando la nulidad de la mencionada escritura; a saber, la cancelación del asiento de inscripción de la donación en el Registro de la Propiedad, así como cualquier asiento posterior que hubiese sido inscrito a raíz de dicho negocio jurídico. Según alega el peticionario, ello tiene la consecuencia de que los

---

[4] *Íd.*, a la pág. 232.

terceros adquirentes de la finca objeto de la *Escritura de Donación*, así como los demás terceros con intereses sobre el bien inmueble objeto de la donación declarada nula, sean parte indispensable en el pleito, pues sus derechos propietarios se ven afectados.

Tras varios trámites procesales no necesarios aquí pormenorizar, la señora López García compareció ante nos mediante un alegato en oposición. En síntesis, aduce que el señor López García tuvo la oportunidad de plantear las controversias ante nos en el pleito previo, donde se decretó la nulidad de la *Escritura de Donación* y que, al no hacerlo, éste renunció a tal oportunidad. Además, sostiene que una parte demandada sobre la cual se asumió jurisdicción no puede invocar la defensa de falta de parte indispensable en una acción independiente de nulidad.

Trabada así la controversia y contando con el beneficio de las comparecencias de las partes, procedemos a resolver.

II.

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294 (1989); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445 (1977); *Cortés Piñeiro v. Sucn. A. Cortés*, 83 DPR 685, 690 (1961). Solo en ciertos escenarios muy particulares nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra; asunto

que, como sabemos, en nuestra jurisdicción es gobernado por la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V.

Al respecto, la precitada disposición legal establece lo siguiente:

> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> > (a) Error, inadvertencia, sorpresa o negligencia excusable;
> >
> > (b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48 de este apéndice;
> >
> > (c) fraude (incluso el que hasta ahora se ha denominado 'intrínseco' y el también llamado 'extrínseco'), falsa representación u otra conducta impropia de una parte adversa;
> >
> > **(d) nulidad de la sentencia;**
> >
> > (e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o
> >
> > (f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.
>
> […]
>
> La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse

registrado la sentencia u orden o haberse llevado a cabo el procedimiento. Una moción bajo esta regla no afectará la finalidad de una sentencia, ni suspenderá sus efectos. Esta regla no limita el poder del tribunal para:

(1) Conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento;

(2) conceder un remedio a una parte que en realidad no haya sido emplazada, y

(3) dejar sin efecto una sentencia por motivo de fraude al tribunal.

[…] (Énfasis suplido).

Es, pues, la Regla 49.2 de las de Procedimiento Civil, *Íd.*, el mecanismo que tiene disponible una parte que interese solicitar al foro de instancia "*el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos*". *García Colón v. Sucn. González*, 178 DPR 527, 539 (2010). *Véanse,* además, *De Jesús Viñas v. González Lugo*, 170 DPR 499, 513 (2007); *Náter v. Ramos*, 162 DPR 616, 624 (2004). Este mecanismo tiene un rol dual: adelantar el interés de que los casos se resuelvan en sus méritos, haciéndose justicia sustancial, y, por otra parte, otorgarle finalidad a los pleitos. *Véanse, García Colón v. Sucn. González*, *supra*, a la pág. 540; *Náter v. Ramos*, *supra*; *Municipio de Coamo v. Tribunal Superior*, 99 DPR 932, 936-37 (1971). De otra parte, también se ha dicho que esta disposición legal

**aplica sólo en aquellas raras instancias en que existe un error jurisdiccional o una violación al debido proceso de ley que privó a una parte de la notificación o de la oportunidad de ser oída.** Esta regla no provee a las partes licencia para dormirse sobre sus derechos. (Énfasis suplido). J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. J.T.S. 2011, T. II, pág. 1415.

De igual forma, hemos señalado que, como regla general, la determinación de relevar a una parte de los efectos de una sentencia está supeditada a la discreción del foro sentenciador. Ahora bien, ello encuentra su excepción en los casos de nulidad o cuando la sentencia ha sido satisfecha. *García Colón v. Sucn. González*, *supra*. *Véanse*, además, *Rivera v. Algarín*, 159 DPR 482, 490 (2003); *Garriga Gordils v. Maldonado Colón*, 109 DPR 817, 823-824 (1980). En estos dos escenarios -- pero particularmente, en los casos de nulidad, -- los tribunales no tienen la discreción a la que anteriormente hicimos referencia. Ello, puesto que "*si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado*". *García Colón v. Sucn. González*, *supra*, a las págs. 543-544.[5] *Véase*, además, Hernández Colón, *op cit.*, Sec. 4807, pág. 457. Es decir, en estas instancias, los tribunales no tienen discreción para relevar los efectos de una sentencia; por el contrario,

---

[5] Citando con aprobación a Harold A. Kooman, *Federal Civil Practice*, Sec. 60.06, pág. 246 (1975) ("*An important distinction must be kept in mind in considering the voidness of a judgment as a ground for relief. A void judgment is theoretically no judgment at all, is legally ineffective, and creates no rights or obligations.*").

tienen la obligación de así hacerlo. *Véase Montañez v. Policía de Puerto Rico*, 150 DPR 917, 922 (2000) ("*Es inescapable la conclusión, en consecuencia, que[,] ante la certeza de nulidad de una sentencia, resulta* **mandatorio** *declarar su inexistencia jurídica […]*"). (Énfasis en el original).

La conclusión anterior obedece, sin duda, a que cuando una sentencia es nula, la misma se tiene por inexistente, por lo que no surte efecto alguno. *Véanse Piazza Vélez v. Isla del Río, Inc.*, 158 DPR 440, 453 (2003); *Vázquez v. A.R.Pe.*, 128 DPR 513, 537 (1991); *Figueroa v. Banco de San Juan, supra*. **Como sabemos, se considera nula toda sentencia que se haya dictado por un tribunal sin jurisdicción sobre la materia o sobre la persona, <u>o cuando el debido proceso de ley ha sido quebrantado</u>**. *García Colón v. Sucn. González*, *supra*, a la pág. 543; *Figueroa v. Banco de San Juan*, 108 DPR 680, 688 (1979); *E.L.A. v. Tribunal Superior*, 86 DPR 692, 697-698 (1962). *Véase* además R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, sec. 4807, pág. 456. **De ahí, la facultad inherente de los tribunales para dejar sin efecto una sentencia nula u obtenida mediante fraude, "*ya sea a su propia instancia o a instancia de parte interesada o afectada*"**. (Énfasis suplido). *Véanse Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 DPR 237, 244 (1996); *Figueroa v. Banco de San Juan, supra; Calderón Molina v. Federal Land*

*Bank*, 89 DPR 704 (1963); *Martínez v. Tribunal Superior*, 83 DPR 358 (1961); *Sucn. Rosario v. Sucn. Cortijo*, 83 DPR 678 (1961); *Roca v. Thomson*, 77 DPR 419 (1954). Así pues, "*ante la certeza de nulidad de una sentencia, resulta mandatorio declarar su inexistencia jurídica; ello independientemente del hecho de que la solicitud a tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses establecido en la antes citada Regla 49.2 de Procedimiento Civil*". *García Colón v. Sucn. González*, *supra,* pág. 544.

En cuanto a la nulidad de una sentencia por el quebrantamiento del debido proceso de ley, resultan de particular importancia los pronunciamientos esbozados por el tratadista Rafael Hernández Colón al respecto, a saber: "[el *q]uebrantamiento del debido procedimiento de ley es un concepto mucho más amplio y pueden haber tantas manifestaciones del mismo como principios del debido procedimiento existen y que se hayan quebrantado en un caso en especial*". Hernández Colón, *op. cit.*

Sin duda alguna, una de estas expresiones del quebrantamiento del debido proceso de ley lo es, precisamente, la **falta de parte indispensable** al momento de dictarse una sentencia. *García Colón v. Sucn. González*, *supra*, a la pág. 551. Procede, pues, elaborar sobre este particular.

III.

Sabido es que la Regla 16.1 de las de Procedimiento Civil es la que gobierna todo lo relacionado a la falta de parte indispensable en un pleito. La misma establece que "*[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda*". 32 LPRA Ap. V, R. 16.1.

Dicho de otro modo, una parte indispensable es aquella de la que no se puede prescindir, pues, sin su presencia, las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados. *Véanse Deliz et als. v. Igartúa et als.*, 158 DPR 403, 432 (2003); *Cepeda Torres v. García Ortiz*, 132 DPR 698, 704 (1993). *Véase,* además, Hernández Colón, *op cit.*, Sec. 1202, pág. 165. Es decir,

> [e]l tercero ausente [en el pleito] debe tener un interés común en el [mismo] que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. La justicia completa es aquella entre las partes y no la que se refiere a una parte y el ausente. El interés común tiene que ser uno real e inmediato. (Citas internas omitidas). Hernández Colón, *op cit.*, Sec. 1202, pág. 166.

**Sobre el alcance de la Regla 16.1 de las de Procedimiento Civil,** *supra*, **este Tribunal ha señalado que "*este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su***

**libertad o propiedad sin el debido proceso de ley"**. (Énfasis suplido). *Mun. de San Juan v. Bosque Real, S.E.*, 158 DPR 743, 756 (2003); *Cepeda Torres v. García Ortiz*, *supra*. *Véase*, además, *Infante v. Maeso*, 165 DPR 474, 490 (2005). Más específico aún, esta regla parte de dos principios fundamentales, a saber: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. *Cepeda Torres*, *supra*, a la pág. 704. *Véanse,* además, *García Colón* v. Sucn. González*, supra*, a la pág. 550; *Rodríguez Rodríguez v. Moreno Rodríguez*, 135 DPR 623, 627 (1994).

Ahora bien, precisa señalar que no se trata de cualquier interés sobre un pleito, sino de uno de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos a esa parte. *Romero v. S.L.G.*, 164 DPR 721, 733 (2005). *Véase* Cuevas Segarra, *op. cit.*, a la pág. 691. Asimismo, el "*interés común*" al que hace referencia la Regla 16.1 de las de Procedimiento Civil, *supra*, no es cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro. *Pérez v. Morales Rosado*, 172 DPR 216, 223 (2007); *Romero v. S.L.G.*, *supra*; *Deliz et als. v. Igartúa et als.*, *supra*, a la pág. 435.

De otra parte, este Tribunal ha sentenciado que en la interpretación de esta regla se requiere un enfoque pragmático; es decir, una evaluación individual a la luz de las circunstancias particulares que se presenten y no de una fórmula rígida para determinar su aplicación. *Romero v. S.L.G.*, *supra*, a la pág. 732. En ese sentido, conviene destacar que

> [l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia. (Citas internas omitidas). J.A. Cuevas Segarra, *op. cit.*, pág. 695.

**Dicho de otro modo, la determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada caso.** Ello implica que los tribunales deben hacer un análisis juicioso sobre los derechos de las partes que no están presentes y las consecuencias de ser unidas al procedimiento. Así pues, lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente. *Pérez v. Morales Rosado*, *supra*; Cuevas Segarra*, op. cit.*

Recordemos que la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que esta incide sobre la jurisdicción del tribunal. *García Colón v. Sucn. González, supra; Romero v. S.L.G., supra.*

En fin, como se puede apreciar, la razón de ser de la precitada Regla 16.1 de las de Procedimiento Civil, *supra*, responde al interés de proteger a aquellas personas -- naturales o jurídicas -- que no están presentes en el pleito de los efectos que acarrea la sentencia dictada y así evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. *García Colón v. Sucn. González, supra; Rodríguez Rodríguez v. Moreno Rodríguez, supra; Granados v. Rodríguez Estrada II*, 124 DPR 593, 605 (1989); *Hernández Agosto v. Romero Barceló*, 112 DPR 407, 412-413 (1982). *Véase*, además, 7 Wright, Miller and Kane, *Federal Practice and Procedure: Federal Rules of Civil Procedure*, Sec. 1602 (3ra ed.) ("*… the rule should be employed to promote the full adjudication of disputes with a minimum of litigation effort.*").

Dicha protección encuentra su razón de ser en que, como hemos establecido en más de una ocasión, consideramos que omitir traer a una parte indispensable a un pleito, sin duda alguna, se traduce en una violación al debido proceso de ley

que le cobija. *García Colón v. Sucn. González*, *supra*, a la pág. 550; *Romero v. S.L.G. Reyes, supra*, a la pág. 733; *Deliz et als. v. Igartúa et als., supra*, a la pág. 435. Es precisamente la mencionada violación al debido proceso de ley la que, en consecuencia, hace que la ausencia de parte indispensable se considere un fundamento para relevar el efecto de una sentencia.

En cuanto a la causal específica de falta de parte indispensable como fundamento para relevar el efecto de una sentencia, hace unos años atrás, en *García Colón v. Sucn. González*, *supra*, a la pág. 551, establecimos la normativa que, al día de hoy, rige este tipo de controversias. En aquella ocasión señalamos lo siguiente:

> Es indubitado, pues, que el mecanismo procesal de relevo de sentencia está disponible cuando dicha sentencia se ha dictado en ausencia de una parte indispensable. Dicho razonamiento es cónsono con la normativa proyectada, ya que la omisión de una parte indispensable viola el debido proceso de ley, que al fin y al cabo es un derecho fundamental tutelado por nuestra Constitución. Al tratarse de la violación de un derecho constitucional, el relevo de sentencia se justifica por razón de nulidad de la sentencia. Además, como ya expresamos, una sentencia que se dicte sin una parte indispensable, hace que el tribunal que la dictó carezca de jurisdicción sobre la persona, tornando nula la sentencia, lo que a su vez permite utilizar el vehículo procesal del relevo de sentencia para cuestionar la determinación del foro sentenciador. (Citas internas omitidas).

Siendo ello así, y de conformidad con lo anterior, no albergamos duda alguna de que la ausencia de parte indispensable es uno de esos pocos y particulares escenarios

donde se le permite a una parte solicitar el relevo de los efectos de una sentencia previamente dictada en su contra. Máxime, en aquellos escenarios donde se cuestiona la validez de un negocio jurídico que obtuvo acceso al Registro de la Propiedad mediante la inscripción del correspondiente asiento y del cual, a su vez, nacieron inscripciones posteriores. Veamos.

IV.

Es alto conocido que nuestro sistema registral inmobiliario se basa en brindarle protección a la certeza del tráfico económico inmobiliario. Precisamente por ello es que el Registro de la Propiedad de Puerto Rico tiene como fin el contener "*la expresión más fiel y posible de la realidad inmobiliaria*". *Distribuidores Gas P.R. v. Registradora*, 188 DPR 351, 359 (2013), citando a E. Vázquez Bote, *Sentido de la reforma hipotecaria en Puerto Rico*, Tesis Doctoral en Derecho, San Juan, 1972, pág. 107. *Véase,* además, *Sánchez Díaz v. E.L.A.*, 181 DPR 810, 830 (2011). Es, pues, dicho ente el que contiene "*las transacciones que afectan la titularidad de los derechos reales y otros derechos inscribibles que se imponen sobre los bienes inmuebles. Íd.*, a la pág. 829.

En este sentido, una vez inscritos los documentos en el Registro[6], los mismos adquieren publicidad y, así, "*dan

---

[6] Resulta preciso señalar que tanto la *Ley Hipotecaria y del Registro de la Propiedad de 1979* (derogada), así como la Ley Núm. 210-2015, también conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico* (en adelante, "Ley Núm. 210-2015"),

*eficacia a las garantías reales que confieren protección a adquirentes y acreedores, junto a la defensa y legitimación de las titularidades inscritas*". (Citas internas omitidas). *Íd*. Así, pues, que una vez se califican los títulos de forma favorable, estos quedarán inscritos en el Registro de la Propiedad y "*surtirán efecto en cuanto a terceros desde la fecha de su inscripción*". 30 LPRA ant. sec. 2256.[7] En cuanto a los derechos registrados y debidamente inscritos respecta, se presumirá que estos "*existen y pertenecen a su titular en*

---

establecen cuáles serán aquellos títulos, actos y contratos que tendrán acceso al Registro de la Propiedad mediante la inscripción. En esencia, se pueden resumir de la siguiente manera:

1.    Los derechos reales (el dominio, las servidumbres, el usufructo, el uso, la habitación, el derecho de superficie, etc.).

2.    Los derechos reales administrativos. En esta categoría caben los bienes patrimoniales del Estado, sus instrumentalidades y los municipios, las concesiones administrativas […].

3.    Los derechos reales inscribibles por afinidad (los arrendamientos, el derecho de opción, las prohibiciones de disponer, las adjudicaciones para pago de deudas, etc.).

4.    Algunos hechos, derechos y situaciones personales (las anotaciones preventivas, las resoluciones judiciales de incapacidad o limitativas de la capacidad, etc.).

5.    Ciertos actos de carácter urbanístico (condiciones restrictivas de uso y edificación, transferencias de derechos de desarrollo, control de acceso a calles y urbanizaciones, etc.).

Luis R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, San Juan, Jurídica Ed. 2012, pág. 397. *Véanse*, además, Art. 38 de la *Ley Hipotecaria y del Registro de la Propiedad de 1979* (derogada), 30 LPRA ant. sec. 2201; Arts. 4, 5, 6, 7 y 8 de la Ley Núm. 210-2015.

[7] Es menester señalar que igual disposición a la aquí citada -- de la antigua *Ley Hipotecaria y del Registro de la Propiedad de 1979* (derogada) -- está contenida en el vigente Art. 19 de la Ley Núm. 210-2015.

*la forma determinada por el asiento respectivo".* 30 LPRA ant. sec. 2352.[8]

No obstante -- y medular a la controversia ante nos -- debemos tener presente que, precisamente por tratarse de una presunción, es norma reiterada en nuestro ordenamiento que cuando se vaya a ejercitar alguna acción contradictoria del dominio de inmuebles o derechos reales inscritos a nombre de cierto titular, la misma no podrá realizarse *"sin que previamente o a la vez se pida en demanda judicial la corrección, nulidad o cancelación de la correspondiente inscripción, cuando proceda".* *Íd.* En aras de lo anterior, nuestro sistema registral inmobiliario reconoce que, **en todas aquellas instancias en las que se haya de solicitar por la vía judicial la rectificación del Registro de la Propiedad, por una de las causales allí contenidas -- la cual incluye aquella que proceda *"de la falsedad, nulidad o defecto del título que hubiere motivado el asiento* [...]*"* -- deberá presentarse una demanda *"contra todos aquellos a quienes el asiento que se trata de rectificar le conceda algún derecho".*** (Énfasis suplido). 30 LPRA ant. sec. 2360.[9]

### VI.

Ahora bien, en vista de que el Tribunal de Primera Instancia dispuso del caso ante nos mediante el mecanismo dispuesto en la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, antes de pasar a disponer de la

---

[8] *Véase* el Art. 34 de la Ley Núm. 210-2015.
[9] *Véase* el Art. 212 de la Ley Núm. 210-2015.

controversia ante nuestra consideración, conviene recordar que la referida norma faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los siguientes fundamentos: falta de jurisdicción sobre la materia; falta de jurisdicción sobre la persona; insuficiencia del emplazamiento; insuficiencia del diligenciamiento del emplazamiento; dejar de exponer una reclamación que justifique la concesión de un remedio; y dejar de acumular una parte indispensable. *Rivera Sanfeliz v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011).

Asimismo, hemos establecido que, al momento de considerar una moción de desestimación, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra; *Colón Rivera et al. v. ELA*, supra; *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811 (2013). Es por esto que, para que proceda una moción de desestimación, "*tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor*". *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra; *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Aclarado lo anterior, y de conformidad con la normativa antes expuesta, pasamos a resolver.

VII.

Como mencionamos anteriormente, en el presente caso se otorgó una *Escritura de Donación* mediante la cual la señora López García cedió a favor de su hermano, el señor López García, su participación de un cincuenta por ciento (50%) sobre el Remanente II (Este); propiedad objeto del caudal hereditario formado tras el fallecimiento del padre de ambos. Años después, la señora López García presentó una demanda en nulidad de contrato, rendimiento de cuentas, y daños y perjuicios. En dicha acción, **donde se incluyó como parte solamente al peticionario**, la señora López García solicitó que se declarara la nulidad de la *Escritura de Donación*. No obstante, de la propia demanda surge que mediante la otorgación de la Escritura Núm. 20 del 29 de octubre de 1998, ante el Notario Enrique Umpierre Suárez, el señor López García había vendido el referido Remanente II a RJ Development, SE, por la suma de $1,450,000.

En lo pertinente, ésta arguyó que la escritura en cuestión contravenía las disposiciones de la antigua Ley Hipotecaria, toda vez que el negocio jurídico realizado en virtud de la referida escritura constituyó una enajenación de una cuota común pro indivisa sobre un bien específico del caudal hereditario, sin la correspondiente partición hereditaria previa.

Tras varios trámites procesales, el Tribunal de Primera Instancia decretó la nulidad de la *Escritura de Donación*, por, a su juicio, contravenir las disposiciones en nuestro ordenamiento jurídico. A tales efectos, concluyó que, al no haber existido una partición hereditaria al momento de celebrarse el negocio jurídico en cuestión, la señora López García estaba impedida de ceder una participación indivisa, lo que haría nula e inexistente la escritura en cuestión.

Por su parte, luego de que el señor López García acudiera en revisión al Tribunal de Apelaciones, dicho Foro desestimó el recurso incoado por este, por haber sido presentado de forma tardía, lo que le privaba de jurisdicción. Posteriormente, bajo los mismos fundamentos de falta de jurisdicción, esta Curia también denegó la expedición del recurso instado ante nos.

Fue, precisamente, a raíz de este panorama que el señor López García presentó una demanda sobre acción independiente de nulidad al amparo de la Regla 49.2 de las de Procedimiento Civil, *supra*, en la que solicitó el relevo de los efectos de la sentencia dictada en su contra, en lo aquí pertinente, por supuesta falta de parte indispensable. El señor López García alegó que, en la acción de nulidad de la *Escritura de Donación* instada por su hermana, no se incluyeron como partes a los adquirientes posteriores de la propiedad objeto de la referida escritura, quienes eran titulares registrales; ni a quienes adquirieron las edificaciones ubicadas en el solar donado; ni

a las entidades bancarias y/o financieras que facilitaron ayudas económicas a los desarrolladores en el terreno.

Tras varios trámites procesales, el foro primario **desestimó** la acción independiente de nulidad, bajo el único fundamento de que el señor López García pudo presentar sus alegaciones en el pleito original y, al no hacerlo, la acción instada bajo la Regla 49.2 de las de Procedimiento Civil, *supra*, constituía un "*subterfugio*" para continuar litigando el mismo asunto.

Por su parte, el Tribunal de Apelaciones confirmó la desestimación realizada por el foro primario, por entender que la "*teoría*" esbozada por el peticionario contradecía "*la presunción de certeza y corrección de las inscripciones que obran en el Registro de la Propiedad*".[10] Según la postura asumida por el foro apelativo intermedio, el peticionario no podía "*pretender que se anule una sentencia a base de una premisa que contradice un claro postulado de nuestro ordenamiento jurídico o a base de especulaciones jurídicas divorciadas de la realidad*".[11] Por ello, concluyó que no hubo

---

[10] *Véase* Apéndice de *Certiorari*, a la pág. 232.

[11] Nótese que en la Sentencia del Tribunal de Apelaciones se hace referencia a que "*el derecho registral inmobiliario [de Puerto Rico] está predicado en la **presunción** de certeza y corrección de las inscripciones*" contenidas en el Registro de la Propiedad. (Énfasis suplido). *Véase* Apéndice de *Certioari*, a la pág. 232. No obstante, a pesar de tal expresión, el foro apelativo intermedio confirmó el dictamen emitido por el foro primario, bajo el único fundamento de que la teoría esbozada por el peticionario es una "*errada*". Concluyó el Foro, de forma contradictoria, que los argumentos del peticionario contravienen "*un claro postulado de nuestro ordenamiento jurídico*". *Íd.*

omisión de parte indispensable. Ambos foros erraron en su proceder. Nos explicamos.

En el presente caso, estamos ante un pleito mediante el cual se decretó la nulidad de una *Escritura de Donación* de cierta parcela ubicada en el Bo. Mamey y Lirios de Juncos, Puerto Rico. Según las alegaciones incluidas en la demanda incoada por el señor López García, dicha parcela fue posteriormente vendida a unos terceros. Asimismo, el peticionario alega que en el referido pleito mediante el cual se decretó la inexistencia de la donación, no se incluyeron como partes a esas personas que -- posterior al otorgamiento de la *Escritura de Donación* que luego fue declarada nula -- adquirieron algún tipo de interés sobre la propiedad en cuestión.

En este sentido, analizando las alegaciones contenidas en la demanda de la forma más favorable al demandante -- según lo requerido por el esquema vigente en nuestro ordenamiento jurídico en torno a las mociones de desestimación al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, -- así como el derecho aplicable, debemos dar por ciertas aquellas alegaciones bien hechas por el peticionario en su demanda en cuanto a la existencia de terceros adquirentes de la propiedad objeto de la *Escritura de Donación*.

Asimismo, bajo el mismo estándar de revisión, debemos tomar por ciertas aquellas inferencias que puedan derivarse de estas alegaciones. Máxime, cuando las alegaciones

presentadas por la señora López García en su solicitud de desestimación se basan, esencialmente, en que el señor López García debió haber presentado tales argumentos en el pleito original. Ello, inescapablemente, no es suficiente para justificar la desestimación de la demanda cuando, en un caso como el presente, se alega la nulidad de un decreto judicial por supuesta falta de parte indispensable. En todo caso, la recurrida debió contravenir las alegaciones esbozadas por el peticionario; al no hacerlo, no procedía la desestimación de la demanda.

De ser cierto lo alegado por el señor López García -- de conformidad con la normativa antes expuesta, -- los terceros a los que éste hace referencia debieron ser incluidos en el pleito de nulidad de escritura de donación, por ser parte indispensable, y a tenor con la salvaguarda del derecho al debido proceso de ley que les cobija; pues, de probarse en su día que, en efecto, a raíz de la inscripción de donación en el Registro de la Propiedad surgieron asientos posteriores que confirieran títulos o derechos a favor de éstos, sus derechos reales o intereses podrían quedar afectados por la sentencia que, en su día, dictase el Tribunal. Por ello, como ya mencionamos, deberán ser considerados como parte indispensable.

Así las cosas, tomando como ciertas las alegaciones del señor López García, y bajo el análisis aquí establecido sobre quién debe considerarse parte indispensable en un proceso de

nulidad de negocio jurídico, entendemos que de probarse en su momento la veracidad de las mismas, éste tendría un remedio a su favor. No podía, pues, desestimarse el presente caso al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, de la forma en que lo hizo el Tribunal de Primera Instancia y que, incorrectamente, el Tribunal de Apelaciones confirmó.

Procede, entonces, devolver el caso al Tribunal de Primera Instancia para la celebración de una vista dirigida a establecer la existencia o no de inscripciones posteriores al de la donación de la mencionada propiedad, que otorguen derechos y/o títulos a favor de terceros. De determinarse que, en efecto, existen, según lo dispuesto por este Tribunal en el día de hoy, procederá el relevo de la sentencia de nulidad conforme a la Regla 49.2 de las de Procedimiento Civil, *supra*. En cambio, si la existencia de estas partes no se acredita ante el foro primario, la sentencia de nulidad de la *Escritura de Donación* mantendrá su plena vigencia.

## VIII.

Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al foro primario para la continuación de los procedimientos según lo aquí establecido.

Se dictará Sentencia de conformidad.

Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Héctor R. López García

    Peticionario

        v.

Laura I. López García

    Recurrida

CC-2014-0426     *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 10 de abril de 2018.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la Sentencia del Tribunal de Apelaciones y se devuelve el caso al foro primario para la continuación de los procedimientos según lo aquí establecido.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente y hace constar la siguiente expresión:

La Jueza Presidenta Oronoz Rodríguez disiente por entender que, en estas circunstancias particulares, las personas que posteriormente adquirieron algún derecho sobre el inmueble no son partes indispensables en cuanto al pleito de nulidad de la escritura de donación. Esto, pues, sus intereses y reclamaciones no inciden sobre la controversia entre el Sr. Héctor R. López García y Sra. Laura Ivelisse López sobre la nulidad de la donación por haberse enajenado una cuota indivisa

sobre un bien específico del caudal hereditario sin que se hubiera efectuado una partición hereditaria. Además, estos no quedan desprovistos de remedios, pues siempre pueden plantear en un pleito posterior que son terceros registrales.

La Juez Asociada señora Rodríguez Rodríguez disiente y hace constar la siguiente expresión:

La Juez Asociada señora Rodríguez Rodríguez disiente por considerar que la norma pautada no se ajusta a Derecho. Entre otras cosas, ésta no sopesa las ramificaciones procesales y sustantivas de requerir la comparecencia a un pleito de impugnación de escritura de donación -instado entre unos coherederos- de unos terceros, quienes uno de los herederos alega son los "dueños" actuales del bien donado. Mediante esta Opinión se decreta, erróneamente, la nulidad de una sentencia que fue dictada conforme a Derecho y cuyos efectos jurídicos no inciden en el derecho que nuestro ordenamiento registral provee a esas partes que una mayoría de este Tribunal cataloga como indispensables. Tal y como señaló la Jueza Fraticelli Torres en su sentencia al rechazar los argumentos del peticionario sobre la falta de partes indispensables:

La teoría esbozada por el apelante adolece del error de suponer que la falta de partición hereditaria surgía de forma clara y expresa del Registro de la Propiedad y, por ello, concluir que los terceros adquirentes se verían afectados en sus derechos propietarios. Sobre esa suposición, coincidimos con la parte apelada al manifestar lo siguiente: "de ser cierto que la falta de partición previa era tan clara y expresa: ¿Cómo fue posible entonces que el/la Registrador(a) hubiese inscrito la Escritura de Donación a pesar de la tajante prohibición del

Artículo 95 de la Ley Hipotecaria?

> [N]uestro derecho registral inmobiliario está predicado en la presunción de certeza y corrección de las inscripciones que obran en el Registro de la Propiedad. Su razonamiento parte de una premisa sobre la cual no hay constancia en el expediente: el cuestionamiento de la titularidad registral o de los
>
> derechos propietarios de esos terceros a los que hace referencia como partes indispensables. No puede la parte apelante pretender que se anule una sentencia a base de una premisa que contradice un claro postulado de nuestro ordenamiento jurídico o a base de especulaciones jurídicas divorciadas de la realidad.

*Sentencia del Tribunal de Apelaciones*, en la pág. 6.

El decreto de nulidad de la escritura de donación en cuestión no impide que los futuros adquirientes puedan ampararse en la tercería registral para proteger sus posibles derechos e intereses en el bien donado. Justamente, la figura del tercero registral protege en su derecho y mantiene en su adquisición a todos aquellos que hayan confiado en las constancias del Registro al adquirir un derecho real, siempre y cuando cumplan con los requisitos preceptuados en la Ley Hipotecaria. En virtud de esta protección, un enfoque pragmático precisa colegir que, en este caso, no se configura un interés de tal orden que impida la confección de un remedio adecuado sin afectar o destruir radicalmente los derechos de quienes el peticionario alega son partes indispensables. *Véase Romero v. S.L.G. Reyes*, 164 D.P.R. 721, 733 (2005). A fin de cuentas, tanto el remedio como los derechos hacederos de estos presuntos terceros permanecerán inalterados cuando el foro

primario vuelva a dilucidar la validez jurídica de una escritura que es, a todas luces, nula.

No obstante lo anterior, para la mayoría de los integrantes de este Tribunal, en el nuevo pleito de nulidad de la escritura de donación tendrán que comparecer como partes indispensables esos terceros: los adquirientes posteriores, los actuales titulares registrales, las entidades bancarias o financieras que concedieron préstamos al desarrollador y todos aquellos que adquirieron los solares edificados en la urbanización que se desarrolló en la finca donada. Así, las consecuencias jurídicas ulteriores de este dictamen derivan en un proceso abstruso, enrevesado y complicado que, sin duda, no tendrá ningún impacto sobre el resultado sustantivo de la sentencia objeto del relevo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo