ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **JUNTA DE PLANIFICACIÓN DEL GOBIERNO DE PUERTO RICO**<br>DEMANDANTE(S)-APELANTE(S)<br><br>V.<br><br>**MICHAEL OCASIO ALGARÍN**<br>DEMANDADA(S)-APELADA(S) | KLAN202500212 | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **FAJARDO**<br><br>Caso Núm.<br>**FA2025CV00037 (302)**<br><br>Sobre:<br>Injunction |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 24 de abril de 2026.

Comparece ante este Tribunal de Apelaciones, la **JUNTA DE PLANIFICACIÓN DEL GOBIERNO DE PUERTO RICO (JUNTA DE PLANIFICACIÓN)** mediante *Apelación* incoada el 13 de marzo de 2025. En su escrito, nos solicita que revisemos la *Sentencia Final* dictaminada el 24 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo.[1] En dicha decisión, se ordenó la desestimación, sin perjuicio, de la *Demanda* por falta de parte indispensable.

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

**- I -**

El 8 de mayo de 2018, se interpuso una solicitud de radicación de Querella mediante el Sistema Único de Información Single Business Portal (SBP) ante la Junta de Planificación.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 24 de enero de 2025. Apéndice de la *Apelación*, pág. 7.

Número Identificador:
SEN2026_____

Más tarde, el 5 de octubre de 2018, el señor **MICHAEL OCASIO ALGARÍN** (señor **OCASIO ALGARÍN**) presentó una reapertura para un proyecto residencial bajo el caso número 2018-221880-CCO-002511 y la misma fue autorizada (prórroga).[2]

Posteriormente, el 21 de mayo de 2021, el señor Daniel Pagán Caraballo, inspector de la **JUNTA DE PLANIFICACIÓN**, realizó una inspección ocular de la propiedad.[3] Sus hallazgos fueron:

> "Se hizo una nueva reinspección sobre la querella. Observe una estructura de 2 pisos construida en hormigón armado y bloques. La primera planta mide 40 pies de largo por 30 pies de ancho aproximadamente. La segunda planta mide 30' por 20' aproximadamente. El querellado construyó una escalera en el patio lateral izquierdo que tiene una distancia con la colindancia con la querellante de 7.5 pulgadas aproximadamente. El querellado alega que el construir la escalera fue un acuerdo verbal entre las partes desde hace años. El patio lateral derecho mide aproximadamente 1 pie x 6 pulgadas. Se observó que la residencia no cuenta con contadores de luz para los apartamentos y tiene un solo contador agua. En el patio frontal no tiene líneas divisorias para estacionar autos de los inquilinos. Al momento de la reinspección, el querellado indicó que la residencia la utiliza para alquiler de apartamentos. El letrero ubicado al frente de la residencia le falta información básica. Se procede según las leyes y reglamentaciones que aplicables. Se buscó en los 3 diferentes sistemas de radicaciones no se encontraron de evidencia para el permiso de construcción".

Tiempo después, el 25 de octubre de 2023, la **JUNTA DE PLANIFICACIÓN** intimó una *Notificación de Hallazgo(s) y Orden de Mostrar Causa* (*Notificación*).[4] Dicha *Notificación* contiene los siguientes hallazgos:

(i)     construcción de un segundo nivel sobre la propiedad existente en hormigón y bloques, con medidas aproximadas de treinta pies por veinte pies (30' x 20'), sin ostentar el permiso de construcción;

(ii)    construcción de una escalera en hormigón en el patio lateral izquierdo de la propiedad a una distancia aproximada de siete punto cinco pulgadas (7.5") aproximadamente con respecto a la colindancia, sin

---

[2] Apéndice de la *Apelación*, págs. 34-35.
[3] Apéndice de la *Apelación*, págs. 24-31. A la *Querella* se le asignó el número 2018-SRQ-003432. Al momento de los hechos, conforme al Catastro Digital del Centro de Recaudación de Ingresos Municipales (CRIM), el señor **OCASIO ALGARÍN** aparecía como el dueño registral de la propiedad ubicada en la Urbanización Alturas de Rio Grande V-1128 Calle 21 en el Municipio de Río Grande, Puerto Rico. El número de catastro es el 090-084-246-37-001.
[4] Apéndice de la *Apelación*, págs. 16-23. En la *Querella*, según la *Notificación de Hallazgo(s) y Orden de Mostrar Causa,* se alegó lo siguiente:
> "El vecino construyó tiene apartamento de vivienda para rentar de 4 apartamentos y la escalera está al lado de mi propiedad. Según el CRIM no tiene solicitud de permiso para construcción y está construyendo una segunda planta. Sospecho que el vecino tomó parte de mi propiedad y deseo que se envíe un inspector."

          ostentar el permiso de construcción y en violación de las disposiciones reglamentarias en torno a las colindancias;

(iii)    patio lateral derecho con medidas aproximadas de un pie y seis pulgadas (1"-6") en violación a las disposiciones reglamentarias en torno a las colindancias; y

(iv)    utilización de la estructura para alquiler de varias unidades de apartamentos sin permiso de uso.

Evaluados los hechos y los estatutos aplicables, la **JUNTA DE PLANIFICACIÓN** determinó que se habían violentado las disposiciones del Art. 9.12 de la Ley Núm. 161-2009 y Reglas 1.6.7 y 3.2.1 del Reglamento Conjunto 2020. Además, se le confirió un término de veinte (20) días para mostrar causa por la cual no se le debían imponer las siguientes sanciones y/o acciones: (a) una multa por la cantidad de $2,448.00 por incurrir en las violaciones o infracciones antes señaladas; (b) emitir una orden de cese y desista bajo el artículo 14.5 de la Ley Núm. 161-2009; (c) acudir al Tribunal de Primera Instancia en solicitud de una Orden Judicial para ordenar la demolición de las obras ilegalmente construidas a costa de la parte querellada y/o del uso no permitido y el cobro de la multa impuesta o emitida por la Junta; y (d) ordenar la imposición de honorarios y costas de abogados según lo dispuesto en la Regla 44 de Procedimiento Civil, según enmendada. Asimismo, sin perjuicio de las sanciones antes descritas, y dentro del plazo para mostrar causa podía: (1) presentar evidencia del permiso requerido; (2) presentar evidencia de haber eliminado las violaciones o infracciones antes mencionadas; (3) presentar evidencia impugnando los hallazgos y conclusiones y fundamentando las defensas; (4) si aplica, presentar evidencia del pago de cualquier multa emitida previa a la fecha de la notificación; y (5) solicitar una audiencia administrativa según dispuesto en el Reglamento Conjunto vigente. También, fue apercibido sobre los métodos de pago y los términos correspondientes para la reconsideración y/o revisión judicial.

Transcurrido el plazo concedido, el señor **OCASIO ALGARÍN** incumplió con lo requerido por la **JUNTA DE PLANIFICACIÓN**. En consecuencia, el 15 de enero de 2025, la **JUNTA DE PLANIFICACIÓN** entabló *Demanda* sobre *injunction* y ausencia de permisos de construcción y de uso contra el señor **OCASIO**

**ALGARÍN.**[5] Interpeló que se expidiera un *Auto de Injunction* ordenando la demolición de las obras ilegalmente construidas en la propiedad; el pago de $2,448.00 por concepto de multa impuesta en la *Orden de Mostrar Causa* decretada el 25 de octubre de 2023; concediera las costas y honorarios de abogado por una suma no menor de $2,500.00; y cualquier otro remedio que en derecho procediera.

El 16 de enero de 2025, se expidieron *Emplazamiento* y *Orden y Citación* señalando audiencia para el 24 de enero de 2025.[6] El 22 de enero de 2025, la **JUNTA DE PLANIFICACIÓN** presentó su *Moción Acreditando Diligenciamientos e Informativa* acompañada de copia de la *Orden y Citación,* así como del *Emplazamiento* debidamente diligenciados el 20 de enero de 2025.[7]

A la audiencia celebrada el 24 de enero de 2025, comparecieron las partes mediante videoconferencia.[8] Emana de la *Minuta* y de la *Transcripción de la Prueba Oral* (TPO) que las partes conversaron; el señor **OCASIO ALGARÍN** manifestó que, para en el 2018, era propietario de la propiedad y en el 2021, salió (vendió) de esa propiedad; tiene la escritura; y desconocía de todo este proceso **desde que vendió el inmueble**.[9] La **JUNTA DE PLANIFICACIÓN** aclaró que, de una búsqueda en el CRIM, el señor **OCASIO ALGARÍN** continuaba apareciendo como dueño de la propiedad; por lo que, no tenían conocimiento del nuevo adquirente.[10] Por ello, procuró copia de la referida escritura de compraventa, y un término de diez (10) días para informar el curso a seguir procesalmente.[11] El Tribunal aseveró que le correspondía a la **JUNTA DE PLANIFICACIÓN** realizar una investigación antes de presentar el

---

[5] Apéndice de la *Apelación*, págs. 10-23.
[6] Entradas núm. 2 y 4 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).
[7] Entrada núm. 7 del expediente electrónico del Sistema Unificado de Manejo y AdmInistración de Casos (SUMAC-TPI).
[8] Apéndice de la *Apelación*, págs. 8-9.
[9] *Transcripción de la Prueba Oral* de la audiencia celebrada el 24 de enero de 2025, a la pág. 6, líneas 59-62; pág. 7, líneas 63-83; pág. 8, línea 84.
[10] *Transcripción de la Prueba Oral* de la audiencia celebrada el 24 de enero de 2025, a la pág. 8, líneas 94-104, pág. 9, líneas 105-109.
[11] *Transcripción de la Prueba Oral* de la audiencia celebrada el 24 de enero de 2025, a la pág. 10, líneas 130-135; pág. 11, líneas 149-153.

pleito para incluir como parte demandada a las personas responsables, y declaró no ha lugar la petición de entregar copia de los documentos (escritura). Esbozó que con los hechos que tenía ante sí no tenía otra determinación que no sea desestimar este pleito por falta de parte indispensable.[12] En la audiencia, la JUNTA DE PLANIFICACIÓN suplicó, verbalmente, la reconsideración de la determinación. No obstante, el foro de instancia se mantuvo en su posición.[13]

El día 7 de febrero de 2025, se dictaminó la *Sentencia Final* apelada. Así las cosas, el 10 de febrero de 2025, la JUNTA DE PLANIFICACIÓN presentó su *Moción en Solicitud de Reconsideración*.[14] Adujo que la intención de la JUNTA DE PLANIFICACIÓN era suplicar una oportunidad para traer al litigio a la parte indispensable, toda vez que había solicitado evidencia capaz de sustentar la veracidad de, si en efecto, el señor OCASIO ALGARÍN traspasó la titularidad de la propiedad objeto de la controversia. De igual forma, aseguró que le correspondía al señor OCASIO ALGARÍN, y no a la JUNTA DE PLANIFICACIÓN, exponer mediante alegación responsiva o moción debidamente fundamentada, la defensa de parte indispensable. El 10 de febrero de 2025, se declaró no ha lugar el petitorio de reconsideración.[15]

Inconforme con lo anterior, el 13 de marzo de 2025, la JUNTA DE PLANIFICACIÓN acudió ante este foro revisor intermedio mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al ordenar la desestimación de la Demanda en el caso de epígrafe cuando: (a) no se presentó evidencia en la vista para sustentar el cambio de dueño de la propiedad objeto de la Demanda; (b) la falta de parte indispensable de por si no conlleva la desestimación del recurso sin ofrecerle al promovente la oportunidad de enmendar la Demanda; (c) lo resuelto por el Tribunal de Instancia está reñido con lo resuelto por el Tribunal Supremo en cuanto a la jurisdicción sobre el demandado en procedimientos bajo el Artículo 14.1 de la Ley 161-2009.

---

[12] *Transcripción de la Prueba Oral* de la audiencia celebrada el 24 de enero de 2025, a la pág. 11, líneas 154-167; pág. 12, líneas 168-183.

[13] *Transcripción de la Prueba Oral* de la audiencia celebrada el 24 de enero de 2025, a la pág. 12, líneas 184-188; pág. 13, líneas 189-209; pág. 14, líneas 210-230; pág. 15, líneas 231-251; pág. 16, líneas 252-261.

[14] Apéndice de la *Apelación*, págs. 2-6.

[15] *Íd.*, pág. 1.

El 17 de marzo de 2025, pronunciamos *Resolución,* en la cual, entre otras cosas, concedimos al señor **OCASIO ALGARÍN** un término de treinta (30) días para presentar su alegato en oposición. El 26 de marzo de 2025, el señor **OCASIO ALGARÍN** presentó una *Moción Informativa,* por derecho propio, en la cual planteó que no era el dueño de la propiedad ubicada en Río Grande. Para ello, anejó la Escritura Núm. 26 sobre *Compraventa* otorgada el 19 de septiembre de 2021 ante el notario Manuel E. Rivera Cruz.

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A – *LEY PARA LA REFORMA DEL PROCESO DE PERMISOS DE PUERTO RICO*

El 1 de diciembre de 2009, se promulgó la Ley Núm. 161, conocida como la *Ley Para la Reforma del Proceso de Permisos de Puerto Rico,* para precisar en nuestro ordenamiento legal y administrativo los criterios que rigen el proceso de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico.[16] La precitada disposición tiene como objetivo la transformación del sistema de permisos en nuestra jurisdicción, de modo que, resulte en uno más transparente, ágil, confiable y eficiente.[17]

A causa de ello, se implantó como política pública el mejorar la calidad y eficiencia de la administración de los procesos de evaluación de solicitudes para el otorgamiento, autorización o denegación de licencias, inspecciones, querellas, certificaciones, consultas, autorizaciones y cualquier trámite necesario o que incida de forma alguna en la operación de un negocio en

---

[16] Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, 23 LPRA § 9011. *Díaz Vázquez v. Colón Peña*, 214 DPR 1135 (2024); *Román Ortiz v. OGPe*, 203 DPR 947, 957 (2020); *Laureano v. Mun. de Bayamón*, 197 DPR 420, 433 (2017); *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014).

[17] *Exposición de Motivos*, Ley Núm. 161-2009, *supra*.

Puerto Rico, así como determinaciones finales y permisos para desarrollos de proyectos de construcción.[18]

Igualmente, la antedicha legislación creó la Oficina de Gerencia de Permisos (OGPe), organismo gubernamental adscrito a la Junta de Planificación, entidad a la cual se le confirió jurisdicción para evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico.[19]

En lo pertinente, el Artículo 2.3 B de la alusiva Ley, en relación con la auditoria de las determinaciones finales, dispone:

> [...] la Junta de Planificación podrá imponer multas o iniciar cualquier trámite disponible al amparo de esta Ley para requerir la paralización, legalización, subsanación o rectificación de las obras de construcción o de cualquier determinación final. [...][20]

Por otro lado, el Artículo 14.1, autoriza a la Junta de Planificación a instar recursos judiciales extraordinarios. Este precepto lee:

> La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida **que haya determinado que sus leyes y reglamentos han sido violados**, o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, **podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar**: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) **la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado**. (Énfasis nuestro).[21]

En el alusivo artículo, se instituyó un procedimiento especial reconocido en nuestro ordenamiento jurídico bajo el concepto de *injunction* estatutario. Este recurso se caracteriza por ser "un mecanismo estatutario,

---

[18] *Íd. Díaz Vázquez v. Colón Peña*, *supra*.
[19] 23 LPRA § 9018. Véase, además *Miranda Correa v. DDEC et al.*, 211 DPR 738 (2023).
[20] 23 LPRA § 9012b-3.
[21] 23 LPRA § 9024. *Díaz Vázquez v. Colón Peña*, *supra*.

independiente, sumario y limitado", y cuyo propósito fundamental es "hacer viable la efectividad de las leyes y los reglamentos de planificación [...]".[22]

Este remedio, al ser estatutario y no surgir de la equidad, procede cuando se demuestre que la obra o el uso no cuenta con las autorizaciones y los permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido.[23] En cuanto a ello, el Tribunal Supremo reiteró que "dicho estatuto no exige que la parte demandada posea un interés propietario o titular con respecto al inmueble o propiedad donde se alegue que se realizan las acciones o conductas que originaron la acción judicial. Es decir, **el Artículo 14.1 no requiere que el procedimiento especial y sumario proceda únicamente en contra del titular o dueño del inmueble objeto de la controversia**" (Énfasis nuestro).[24]

### - B – *DESESTIMACIÓN BAJO LA REGLA 10.2 DE LAS DE PROCEDIMIENTO CIVIL DE 2009*

La Regla 10.2 de las de Procedimiento Civil de 2009 instaura que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva. Una moción de *desestimación* bajo la aludida Regla es aquella que presenta la parte demandada previo a contestar la *Demanda* solicitando que se desestime la causa de acción presentada en su contra.[25]

Esta Regla dispone como fundamentos para la *desestimación*: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) **dejar de acumular una parte indispensable**.[26]

El estándar adjudicativo al evaluar una moción de *desestimación*

---

[22] *Díaz Vázquez v. Colón Peña, supra; CBS Outdoor v. Billboard One, Inc. et al.*, 179 DPR 391, 408 (2010).

[23] *Díaz Vázquez v. Colón Peña, supra.*

[24] *Íd.*

[25] Rafael Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, Lexis Nexis, (2017)., págs. 305– 306.

[26] 32 LPRA Ap. V, R. 10.2.

compele que los tribunales tomen como ciertos "todos los hechos bien alegados de la demanda y que hayan sido aseverados de manera clara y concluyente".[27] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[28] Cuando se plantea una *desestimación* por falta de *jurisdicción* sobre la materia, "es necesario determinar si, tomando como cierto lo alegado por el demandante, el foro tiene jurisdicción para atender el reclamo".[29]

Como parte de este estándar adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[30] Ante esta circunstancia, "debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'".[31] Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[32]

De esta forma, solo procederá una moción de *desestimación* cuando la parte demandante no demuestre tener derecho a remedio alguno bajo

---

[27] *González Méndez v. Acción Social et al.*, 196 DPR 213 (2016).
[28] José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, págs. 529 (citado en *Asoc. Importadores de Cerveza, Inc. v. E.L.A.,* 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).
[29] *Harguindey Ferrer v. U.I.,* 148 DPR 13, 30 (1999).
[30] *González Méndez v. Acción Social et al., supra,* pág. 234.
[31] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409 (2008).
[32] Rafael Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[33] En otras palabras, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[34]

### - C – *Parte Indispensable*

El debido proceso de ley requiere acumular a todas las partes que tengan un interés común en un pleito. El requisito de incluir a todas las partes indispensables responde a dos (2) principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita sea uno completo.[35]

Nuestro Mas Alto Foro ha definido lo que es *parte indispensable* a los efectos de precisar quien debe ser considerado a esos fines. Se describe como "aquella de la cual no se puede prescindir y cuyo interés en la cuestión es de tal magnitud, que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos".[36]

De igual manera, la Regla 16.1 de las de Procedimiento Civil de 2009 implanta, acerca de la acumulación indispensable de partes:

> Las personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y **se acumularán como demandantes o demandadas, según corresponda**. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada.

El interés común al que hace referencia la susodicha Regla "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo.[37]

Por su parte, la Regla 17.1 instituye que:

> Podrá acumularse en un pleito cualquier número de personas, como demandantes o como demandados, **si reclaman o se reclama contra ellas conjunta o separadamente, o en la alternativa, cualquier derecho a un remedio relacionado**

---

[33] *Díaz Vázquez v. Colón Peña, supra*; *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil*, 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231. *Ortiz Matías et al. v. Mora Development,* 187 DPR 649 (2013).
[34] *Ortiz Matías et al. v. Mora Development, supra.*
[35] *Pérez Ríos et al. v. CPE*, 213 DPR 203 (2023).
[36] *Inmob. Baleares et al. v. Benabe et a.l,* 214 DPR 1109 (2024), citando a *Pérez Ríos et al. v. CPE, supra,* y *FCPR v. ELA*, 211 DPR 521, 531 (2023).
[37] *Inmob. Baleares et al. v. Benabe et al., supra*; *Pérez Ríos et al. v. CPE, supra.*

> **con o que surja del mismo acto, omisión, evento o serie de actos, omisiones o eventos siempre que cualquier cuestión de hecho o de derecho, común a todas, haya de surgir en el pleito**. No será requisito que una parte demandante o una parte demandada tenga interés en obtener o defenderse de todo el remedio solicitado. Podrá dictarse sentencia a favor de una o más partes demandantes de acuerdo con sus respectivos derechos a un remedio y contra una o más partes demandados de acuerdo con sus respectivas responsabilidades. (Énfasis nuestro).

La determinación de si una parte debe o no acumularse dependerá de los hechos específicos de cada caso.[38] Además, exige una evaluación jurídica de factores particulares en el contexto de cada caso tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y finalidad.[39]

Respecto a la acumulación permisible de partes, el Tribunal Supremo ha interpretado la alusiva Regla 17.1 de las de Procedimiento Civil de 2009 y resolvió que la misma debe ser interpretada liberalmente a favor de la acumulación.[40] Ello, con el propósito de eliminar obstáculos a la acumulación sin que se afecten derechos sustantivos de las partes, promover la conveniencia en el juicio; evitar la multiplicidad de pleitos; y, celebrar la disposición final de la litigación mediante la inclusión de todas las partes directamente interesadas en la controversia.[41] "Cumplidos los requisitos que señala la Regla 17.1, es discrecional del Tribunal de Primera Instancia permitir o no la acumulación".[42] Cónsono con lo anterior, los tribunales revisores no deberán intervenir con la discreción del foro primario, salvo casos de craso abuso.[43]

Finalmente, la falta de parte indispensable es un planteamiento tan vital que se puede presentar en cualquier momento, lo que incluye que se

---

[38] *Inmob. Baleares et al. v. Benabe et al.*, *supra*; *Infante v. Maeso*, 165 DPR 474 (2005); *Granados v. Rodríguez Estrada II*, 124 DPR 593 (1989).
[39] *Íd*.
[40] *Inmob. Baleares et al. v. Benabe et al.*, *supra*, citando a *Meléndez v. Levitt & Sons of P.R., Inc.*, 106 DPR 437 (1977) y a *Carrasquillo v. Tribunal Superior*, 87 DPR 661, 668 (1963).
[41] J. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 3ra ed. Rev., Puerto Rico, Editorial Nomos, 2023, pág. 188.
[42] *Meléndez v. Levitt & Sons of P.R., Inc*, *supra*, pág. 439. En *Inmob. Baleares et al. v. Benabe et al*, el Tribunal Supremo reiteró que "queda dentro de la discreción del tribunal determinar si, en consideración a las particularidades del caso, es deseable que se incluya a la parte en el pleito con el propósito de conceder un remedio completo y final. Esta discreción se debe ejercer mediando una interpretación liberal a favor de la acumulación."
[43] *Íd*.

presente por primera vez en apelación.[44] Incluso, el tribunal también puede levantarlo *motu proprio*.[45] En fin, una sentencia formulada sin la presencia de una parte indispensable es nula.[46]

- III -

La **Junta de Planificación** nos implora que revisemos la *Sentencia Final* determinada el 24 de enero de 2025 y apuntala que el tribunal se equivocó: (i) al ordenar la desestimación de la Demanda en el caso de epígrafe cuando: (a) no se presentó evidencia en la vista para sustentar el cambio de dueño de la propiedad objeto de la Demanda; (b) la falta de parte indispensable de por si no conlleva la desestimación del recurso sin ofrecerle al promovente la oportunidad de enmendar la Demanda; (c) lo resuelto por el Tribunal de Instancia está reñido con lo resuelto por el Tribunal Supremo en cuanto a la jurisdicción sobre el demandado en procedimientos bajo el Artículo 14.1 de la Ley 161-2009.

En cambio, el 24 de enero de 2025, el señor **Ocasio Algarín** compareció a la audiencia celebrada ante el foro apelado y notificó no ser el dueño de la propiedad ubicada en Río Grande. Ante este foro, presentó su *Moción Informativa* anejando copia de la Escritura Núm. 26 sobre *Compraventa*, otorgada el 29 de septiembre de 2021, ante el notario Manuel E. Rivera Cruz, así como un *Estado de Cuenta* del CRIM con fecha de 27 de enero de 2025.

Analizado minuciosamente los hechos particulares de este caso y los argumentos presentados por las partes a la luz del derecho expuesto, discernimos que incidió el foro primario al desestimar, *sin perjuicio*, la *Demanda*.

Ciertamente, no incluir una parte indispensable podría ser motivo para desestimar una *Demanda*. Empero, nuestro Más Alto Foro ha reiterado que no procede la desestimación de una *Demanda*, si la misma es susceptible

---

[44] *Inmob. Baleares et al. v. Benabe et al, supra.*
[45] *Íd.*
[46] *Íd.*; *Pérez Ríos et al. v. CPE, supra*; *FCPR v. ELA et al.*, 211 DPR 521 (2023).

de ser enmendada. Por ende, como primera opción, resulta totalmente razonable conceder la oportunidad enmendar.

En este caso, toda vez que el estatuto no requiere que la parte demandada posea un interés propietario o titular sobre el inmueble o propiedad donde se alegan que se realizaron o realizan acciones o conductas que originan la causa de acción judicial, la prudencia nos lleva a colegir que el señor **OCASIO ALGARÍN,** quien fuese el dueño al momento de la intervención de la **JUNTA DE PLANIFICACIÓN,** deberá permanecer en esta reclamación por ser parte indispensable.[47]

En otro orden de cosas, el foro de instancia deberá conferir un período de tiempo corto a la **JUNTA DE PLANIFICACIÓN** para enmendar la *Demanda* e **incluir a todas las partes** que se consideren sean indispensables**,** tales como el dueño actual señor Michael Rubén Ocasio Algarín, quien ostenta el dominio, posesión y uso del inmueble. Ello para solucionar la controversia sobre la demolición de las obras ilegalmente construidas en la propiedad y el pago de la multa impuesta en la *Orden de Mostrar Causa* prescrita el 25 de octubre de 2023.

## - IV -

Por los fundamentos antes expuestos, ***revocamos*** la *Sentencia Final* dictada el 24 de enero de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo. En su consecuencia, ***dejamos sin efecto*** la desestimación de la *Demanda* contra el señor ***MICHAEL OCASIO ALGARÍN;*** ***devolvemos*** el caso al Tribunal de Primera Instancia, Sala Superior de Fajardo, para que otorgue un breve intervalo para enmendar la *Demanda* a

---

[47] El *injunction* estatutario para ordenar la paralización o demolición de un uso u obra o la revocación de un permiso al amparo del Art. 14.1 de la Ley Núm. 161-2009 no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de la Regla 57 de las de Procedimiento Civil de 2009. Más aún, **dicho estatuto no exige que la parte demandada posea un interés propietario o titular con respecto al inmueble o propiedad donde se alegue que se realizan las acciones o conductas que originaron la acción judicial.** Es decir, el Art. 14.1 no requiere que el procedimiento especial y sumario proceda únicamente en contra del titular o dueño del inmueble objeto de la controversia. *Díaz Vázquez v. Colón Peña, supra.*

los efectos de incluir a toda(s) la(s) parte(s) indispensable(s) en el proceso y

continúe con los procedimientos de forma compatible con lo aquí resuelto.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de

Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones